IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| LAUREN DODD, RICHARD SMITH, AND AMANDA HAMMOND,<br><br>On behalf of themselves individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>INTERNATIONAL LONGSHOREMEN'S ASSOCIATION AND INTERNATIONAL LONGSHOREMEN'S ASSOCIATION LOCAL 1475 CLERKS AND CHECKERS UNION, INC.,<br><br>Defendants. | COMPLAINT – CLASS ACTION<br><br><br><br>Civil Action No. _____ |

**CLASS ACTION COMPLAINT
FOR VIOLATION OF THE DUTY OF FAIR REPRESENTATION**

Plaintiffs, on behalf of themselves and all others similarly situated, bring this Complaint against the International Longshoremen's Association (hereafter "the ILA") and International Longshoremen's Association Local 1475 Clerks and Checkers Union, Inc. (hereafter "Local 1475") as follows:

## INTRODUCTION

1.

This is a class action asserting a cause of action created by the Supreme Court in *Vaca v. Sipes,* 386 U.S. 171 (1967) (*i.e.,* the duty of fair representation). It is brought on behalf of a group of Clerks and Checkers who perform work at the Port of Savannah pursuant to a collective bargaining agreement between Defendants and the Georgia Stevedore Association.

2.

The ILA and Local 1475 urged the Georgia Stevedore Association to enter into an agreement that split the job assignment classification to which Plaintiffs are assigned to (*i.e.,* Class HH) into two Subclasses, (*i.e.*, HH1 and HH2). Under this agreement and as of June 19, 2023, a cohort largely composed of the family and friends of Local 1475 leaders were placed in a new job assignment classification known as Subclass HH1. Consequently, they were afforded favorable job assignment preference at the expense of the Subclass HH2 members, resulting in a dramatic loss of pay and benefits to the members of Subclass HH2. These actions violated the unions' duty of fair representation to the Proposed Class.

## JURISDICTION AND VENUE

3.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case arises under a federally created cause of action.

4.

Venue properly lies in the Southern District of Georgia under 28 U.S.C. § 1391 because Local 1475 is subject to this Court's personal jurisdiction and is located within this judicial district.

## PARTIES

5.

Plaintiff Lauren Dodd is a Clerk and Checker who resides in Georgia.

6.

Plaintiff Richard Smith is a Clerk and Checker who resides in Georgia.

7.

Plaintiff Amanda Hammond is a Clerk and Checker who resides in Georgia.

8.

The ILA is an international labor organization that represents a bargaining unit comprised of Clerks and Checkers who perform work at the Port of Savannah.

9.

Local 1475 is a local labor organization that, in conjunction with the ILA, represents the Clerks and Checkers at the Port of Savannah for the purposes of collective bargaining under the National Labor Relations Act.

**CLASS ACTION ALLEGATIONS**

10.

Plaintiffs bring this action pursuant to Fed. R. Civ. Pro. 23(b)(3) individually and on behalf of the following Class (the "Proposed Class"):

> All persons who the ILA and Local 1475 assigned to Subclass HH2 on June 19, 2023

11.

The Proposed Class is composed of 64 people.

12.

The Proposed Class is so numerous that joinder of all members is impracticable.

13.

Members of the Proposed Class are so numerous that it is impractical to bring them all before this Court.

14.

Questions of law and fact that are predominate and common to the Proposed Class include, among others, whether the ILA and Local 1475 breached their duty

4

of fair representation when they split the job assignment classification to which Plaintiffs are assigned to (*i.e.*, Class HH) into two subclasses, (*i.e.*, Subclasses HH1 and HH2), said split placing workers who had waived their seniority and who, therefore, had no seniority preference over members of the Proposed Class, and who were largely the friends and family of Local 1475 leaders, into Subclass HH1and placing the members of the Proposed Class into Subclass HH2, and then prohibiting the assignment of work to any member of the Proposed Class until every member of Subclass HH1 was offered work, thereby causing an immediate and significant loss of work opportunities for the members of the Proposed Class.

15.

Each Plaintiff has an interest which is wholly compatible with the interests of the members of the Proposed Class because Plaintiffs are members of the Proposed Class and cannot be assigned work until all members of Subclass HH1 are offered work and Plaintiffs have suffered a loss of work opportunities typical of the losses realized by the Proposed Class.

16.

Plaintiffs have standing to bring the claims alleged in this Complaint because they have each sustained a reduction in work opportunities because of Defendants' breach of their duty of fair representation.

17.

Plaintiffs' claims are typical of the claims of other members of the Proposed Class in that they arise from the same allegedly unlawful course of conduct, *i.e,* the division of Class HH into Subclasses HH1 and HH2.

18.

Plaintiffs' claims are typical of the claims of other members of the Proposed Class in that they are based upon the same legal theory, *i.e.*, the duty of fair representation.

19.

Plaintiffs share the interest of the other members of the Class in recovering damages allegedly suffered as a result of Defendants' breach of duty of fair representation alleged here.

20.

Plaintiffs have retained well-qualified counsel who are experienced in cases of this nature to represent them in conducting this litigation.

21.

Plaintiffs do not have interests that are antagonistic to the other members of the Proposed Class.

22.

Plaintiffs and their counsel are fair and adequate representatives of the Class.

23.

A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as separate actions by each of the Class Members would be repetitive, wasteful, and an extraordinary burden on the Court.

24.

Class Members' identities, recent residential addresses and rates of pay and benefits are all readily available in the books and records of the Defendants.

25.

There will be no difficulty in managing this case as a class action.

**FACTUAL ALLEGATIONS**

26.

The ILA and Local 1475 are parties to a collective bargaining agreement with the Georgia Stevedore Association (hereafter "the CBA") governing the rates of pay, rules, and working conditions for persons working as Clerks and Checkers at the Port of Savannah.

27.

Local 1475 operates a hiring hall wherein it assigns work to Clerks and Checkers in accordance with the order set forth in the CBA and referred to as the "Savannah Clerks and Checkers Seniority Plan" (hereafter "the Plan").

28.

Under the Plan, Clerks and Checkers are grouped together into divisions known as Classes.

29.

Under the Plan, each Class is comprised of Clerks and Checkers who first achieved at least 700 hours of work in a specific "contract year," and who maintained 700 hours of work in each contract year thereafter.

30.

The requirement to work at least 700 hours in order to establish seniority is set forth in Article XXIII, Section 18 of the ILA Constitution, which states:

> Every local union shall have a seniority system requiring a minimum of 700 work hours or credited hours to establish a year of service. Such seniority system based on years of service shall be used to determine priority of employment for hiring purposes. . . .

31.

Under the Plan, a contract year begins each October 1st and ends on the following September 30th.

32.

Contract years are designated by the calendar years they straddle, *e.g.*, 2023-2024.

33.

The various Classes created under the Plan form a seniority-based system for assigning Clerk and Checker work at the Port of Savannah.

34.

Under the Plan, Defendants offer available work to all members of a Clerks and Checkers Class before work is offered to Clerks and Checkers in the subsequent class.

35.

During contract year 2020-2021, there was an unusual expansion of Clerk and Checker work at the Port of Savannah creating a temporary demand for additional Clerks and Checkers.

36.

The ILA, Local 1475 and the Georgia Stevedore Association responded to this increased demand for Clerks and Checkers through the creation of an "Emergency List" of new workers.

37.

Before making the Emergency List known to the members of the bargaining unit, Local 1475 leaders recruited family and friends to become Clerks and Checkers under the Emergency List.

38.

For example, Emergency List member Robert Jenkins is a son of Local 1475 Vice President Marvin Jenkins.

39.

For example, Emergency List member Brendon Orrel is a nephew of Local 1475 Vice President Marvin Jenkins.

40.

For example, Emergency List member Stephen Parsons is a brother of Local 1475 Vice President Deck and Dock Michael Parsons.

41.

For example, Emergency List member Morgan Jenkins is a daughter of Local 1475 Business Agent Curtis Jenkins.

42.

For example, Emergency List member Morgan Askew is a long-time family friend of Local 1475 Recording Secretary Beth Tilton.

43.

For example, Emergency List member Mike Askew is a long-time family friend of Local 1475 Recording Secretary Beth Tilton.

44.

For example, Emergency List member Dylan Padgett is a son of Local 1475 Executive Board Member Jared Padgett.

45.

For example, Emergency List member Dominic Uyeda is a nephew of Local 1475 Executive Board Member Jared Padgett.

46.

For example, Emergency List member Joseph Padgett is a brother of Local 1475 Executive Board Members Jared Padgett and Jason Padgett.

47.

For example, Emergency List member Elizabeth Andrews is a niece of Local 1475 Executive Board Member Tommy Andrews.

48.

For example, Emergency List member Shelby Andrews is a daughter of Local 1475 Executive Board Member Tommy Andrews.

49.

For example, Emergency List member Tommy Andrews is a son of Local 1475 Executive Board Member Tommy Andrews.

50.

For example, Emergency List member Paul Elliot is a brother-in-law of Local 1475 Executive Board Member Tommy Andrews.

51.

For example, Emergency List member Armeisha Smith is a daughter of Local 1475 Membership Committee Member Felicia Smith.

52.

For example, Emergency List member Shannon Smith is a daughter of Local 1475 Membership Committee Member Felicia Smith.

53.

For example, Emergency List member Joden Wright is a nephew of Local 1475 Membership Committee Member Felicia Smith.

54.

For example, Emergency List member Jenna Balcom is a daughter of Local 1475 Past President Kurt Balcom.

55.

For example, Emergency List member Matthew Holten is a cousin-in-law of Local 1475 By-Laws Committee Member Alex Bailey.

56.

For example, Emergency List member Hayli Parrish is a cousin of Local 1475 By-Laws Committee Member Alex Bailey.

57.

For example, Emergency List member Stephen Tootle is a brother-in-law of Local 1475 By-Laws Committee Member Alex Bailey.

58.

For example, Emergency List member Jacquely Tootle is a sister of Local 1475 By-Laws Committee Member Alex Bailey.

59.

For example, Emergency List member Michael Bowles is an uncle of Local 1475 By-Laws Committee Member Alex Bailey.

60.

Local 1475 leaders populated the Emergency List in large part with family and friends before the existence of the Emergency List was made generally known to the members of the bargaining unit.

61.

At a Local 1475 membership meeting in February 2021, members asked Local 1475 leaders about the Emergency List.

62.

In response to questions raised at the February 2021 membership meeting and after populating the Emergency List with their friends and family, Local 1475 leaders made the list available to others provided they sign up in person at a location within the Port of Savannah during a single four-hour period occurring two days after the membership meeting.

63.

Only those persons with valid Port of Savannah credentials could access the location where the Emergency List signup occurred.

64.

The ILA and Local 1475 required persons who worked as Clerks and Checkers on the Emergency List to execute a waiver of seniority rights as a condition of employment.

65.

Consequently, Emergency List members who performed Clerk and Checker work in the 2020-2021 contract year had no seniority preference over the members of the Proposed Class who all first performed Clerk and Checker work during the 2021-2022 contract year.

66.

Local 1475 placed approximately 200 persons on the Emergency List.

67.

The ILA, Local 1475 and the Georgia Stevedore Association executed a Memorandum of Understanding on October 11, 2021 (hereafter "the 2021 MOU").

68.

Under the 2021 MOU, classification HH was comprised by "individuals who worked at least 700 combined hours in the 2021-2022 contract year.

69.

Prior to June 19, 2023, Classification HH consisted of Clerks and Checkers who first performed work in the 2021-2022 contract year, and Clerks and Checkers who first performed work under the Emergency List.

70.

Beginning in February 2023, the amount of available Clerk and Checker work at the Port of Savannah declined.

71.

In the Spring of 2023, at the urging of the ILA and Local 1475, the Georgia Stevedore Association entered into a Memorandum of Understanding (hereafter "the 2023 MOU") with Defendants that subdivided Class HH in to two Subclasses designated as HH1 and HH2.

72.

The 2023 MOU defined Subclass HH1 as:

> All individuals who worked at least 700 hours through the Local 1475 hiring system during both the 2020-21 and 2021-22 Contract Years, and all individuals who were on an emergency list during the 2020-21 Contract Year and worked at least 700 hours through the Local 1475 hiring system during the 2021-22 Contract Year.

73.

The 2023 MOU defined Subclass HH2 as:

> All other individuals who worked at least 700 hours through the Local 1475 hiring system during the 2021-22 Contract Year.

74.

The 2023 MOU further provided:

> For purposes of hiring preference within in the HH classification, all members of the Sub-classification HH-1 will be referred work they are qualified to perform before any jobs are offered to members of Sub-classification HH-2.

75.

Prior to the ratification vote on the 2023 MOU, Local 1475 leaders failed to disclose that they had populated the Emergency List, and hence the new Subclass HH1, with their family and friends.

76.

The ILA and Local 1475 demonstrated favoritism for the family and friends of Local 1475 leaders by negotiating and implementing the 2023 MOU.

77.

The ILA and Local 1475 demonstrated favoritism for the family and friends of Local 1475 leaders by failing to disclose that the Emergency List was populated in large part by the family and friends of Local 1475 leaders.

78.

On May 11, 2023, Local 1475 conducted a single day ratification vote of the 2023 MOU.

79.

On May 11, 2023, the membership of Local 1475 ratified the 2023 MOU.

80.

On June19, 2023, the ILA and Local 1475 effectuated the division of Class HH into the subclassifications HH-1 and HH-2.

81.

Approximately 30 persons who appear on the Emergency List and who are now assigned to Subclass HH1 performed less than 700 work hours or credited hours during the 2020-2021 contract year.

82.

As a direct and foreseeable result of this division, the amount of work available of members of Class HH-1 increased substantially.

83.

As a direct and foreseeable result of this division, the amount of work available to members of Class HH-2 declined substantially.

## VIOLATION OF THE DUTY OF FAIR REPRESENTATION

84.

The allegations in all previous paragraphs above are incorporated by reference as if fully set out verbatim herein.

85.

The ILA and Local 1475 arbitrarily and capriciously persuaded the Georgia Stevedore Association to agree to divide Class HH into two subclasses.

86.

The ILA and Local 1475 arbitrarily and capriciously divided Class HH into two subclasses.

87.

The ILA and Local 1475 arbitrarily and capriciously persuaded the Georgia Stevedore Association to require that all members of Class HH-1 be offered work before any member of Class HH-2 is offered work.

88.

The ILA and Local 1475 arbitrarily and capriciously required that all members of Class HH-1 be offered work before any member of Class HH-2 is offered work.

18

89.

The ILA and Local 1475 arbitrarily and capriciously misrepresented material facts regarding the 2023 MOU prior to the ratification vote.

90.

The ILA and Local 1475's actions as described above were discriminatory to the Proposed Class and in bad faith.

91.

As a direct and foreseeable result of their unlawful conduct as described above, Plaintiffs and other members of the Proposed Class have suffered lost wages, health insurance benefits, pension benefits, royalties, vacation and holiday pay, and seniority.

WHEREFORE, Plaintiffs respectfully pray:

1. That the Court declare that this action is properly maintainable as a class action;

2. That the Court certify the Plaintiffs as representatives of the Proposed Class;

3. That the Court appoint the undersigned counsel as Class Counsel;

4. That Plaintiffs' claims and the claims of all Class Members be tried before a jury;

5. That Plaintiffs and the Class Members be awarded damages against all Defendants, jointly and severally, in an amount equivalent to lost wages

pension benefits, royalties, vacation and holiday pay, and seniority they suffered due to Defendants' unlawful conduct in an amount to be proved at trial;

6. That Plaintiffs be awarded their costs and disbursements of this action, including a reasonable allowance of Plaintiffs' attorneys' fees and experts' fees; and

7. For such other and further relief as this Court may deem just and proper.

Respectfully submitted,

|  |  |
|---|---|
|  | **DELONG CALDWELL BRIDGERS FITZPATRICK & BENJAMIN, LLC** |
|  | */s/Charles R. Bridgers* <br> Charles R. Bridgers |
| 101 Marietta Street <br> Suite 2650 <br> Atlanta, Georgia 30303 <br> (404) 979-3150 <br> kevin.fitzpatrick@dcbflegal.com <br> charlesbridgers@dcbflegal.com | Ga. Bar No. 080791 <br><br> */s/ Kevin D. Fitzpatrick, Jr.* <br> Kevin D. Fitzpatrick, Jr. <br> Ga. Bar No. 262375 <br> (to file a motion to appear *pro hac vice*) |
|  | COUNSEL FOR PLAINTIFFS |