IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| Lauren Dodd, et al, )<br>)<br>   Plaintiffs, )<br>)<br>v. )<br>)<br>International Longshoremen's Association )<br>and International Longshoremen's )<br>Association Local 1475 Clerks and Checkers )<br>Union, Inc.; )<br>)<br>   Defendants. ) | Case No. 4:23-cv-00327-RSB-CLR |

## BRIEF IN SUPPORT OF LOCAL 1475'S MOTION TO DISMISS

COMES NOW DEFENDANT, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, LOCAL 1475 (hereinafter "Local 1475"), by and through its undersigned counsel, without waiving any applicable defenses, and submits this *Brief in Support of Local 1475's Motion to Dismiss*. Local 1475 submits this *Motion* on the grounds that: (1) Plaintiffs' claims are time-barred by the six-month statute of limitations; and (2) Plaintiffs' claims have failed to state a claim upon which relief can be granted and should be dismissed.

I.     STATEMENT OF FACTS ALLEGED IN PLAINTIFF'S COMPLAINT[1]

Local 1475 is the bargaining representative for Clerks and Checkers in the Port of Savannah.[2] Plaintiffs are bargaining unit members of Local 1475.[3] Local 1475 is a local union of Defendant International Longshoremen's Association ("ILA") and is within and under the South

---

[1] Factual allegations are construed to be true for the purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Miree v. DeKalb Cnty., 433 U.S. 25, 27 n.2 (1977).
[2] Doc. 1, *Complaint*, P 4, ¶9.
[3] Doc. 1, *Complaint*, P 3, ¶¶5-7.

Atlantic and Gulf Coast District of the International Longshoremen's Association ("District").[4] Defendant Local 1475; Defendant ILA; and the District are all separate and distinct legal entities.

Local 1475 operates a hiring hall for the referral of workers to employer-members of the Georgia Stevedore Association ("GSA") and must supply sufficient qualified labor to fill available jobs for employers represented by the GSA pursuant to the: (1) *ILA Local 1475 Savannah Clerks and Checkers Seniority Plan* ("*Seniority Plan*"); (2) *October 1, 2021 Memorandum of Understanding ("MOU")*; and (3) *June 1, 2023 Addendum to the MOU* ("*Addendum*").[5] The *MOU* and the *Addendum* modified the *Seniority Plan*.

Plaintiffs allege that the question of law and fact in this case is whether Local 1475 breached its duty of fair representation when it: (1) "split the job assignment classification to which Plaintiffs are assigned to (i.e., Class HH) into two subclasses, (i.e., Subclasses HH1 and HH2)."[6]

a. **Allegations Regarding Contract Year ("CY") 2020-2021 and the Emergency List**

Plaintiffs allege that in CY 2020-2021, there was unusual demand for workers that Local 1475 was having trouble meeting and that an Emergency List was created.[7] Plaintiffs allege that the Emergency List was populated with friends and family of Local 1475 leaders.[8] Plaintiffs provide some names of workers off of the Emergency List who were allegedly friends or family of Local 1475 members who have held past service positions with Local 1475 (*By-Laws Committee*; *Membership Committee*; *Executive Board*; and *Past President*).[9] However, the total Emergency List comprised many more workers than those listed - "approximately 200 persons..."[10]

---

[4] Doc. 1, *Complaint*, P 3-4, ¶¶8-9.
[5] Local 1475 requests the Court take judicial notice of the *Seniority Plan*; *10/01/21 MOU*; and *06/01/23 Addendum* as they are all relied upon in the *Complaint* (Doc. 1, *Complaint*, P. 7-8, ¶¶ 26-29). Additionally, Local 1475 asks the Court to take judicial notice of Plaintiff Hammond's prior filing against Local 1475 with the National Labor Relations Board ("NLRB"). Local 1475's *Request for Judicial Notice* ("*RJN*") is filed concurrently with this *Motion*.
[6] Doc. 1, *Complaint*, P. 4-5, ¶14.
[7] Doc. 1, *Complaint*, P. 9, ¶¶35-36.
[8] Doc. 1, *Complaint*, P. 9, ¶37.
[9] Doc. 1, *Complaint*, P. 10-13, ¶¶37-60.
[10] Doc. 1, *Complaint*, P. 14, ¶66.

i. **Plaintiffs were not Bargaining Unit Members in CY 2020-2021**

Plaintiffs were admittedly *not* a part of the bargaining unit at the time the Emergency List was created.[11] None of the workers that are part of the proposed class worked through the hiring hall at the time of the creation of the Emergency List.[12] Plaintiffs did not begin to work through Local 1475's hiring hall until CY 2021-2022 – which began in October 2021 – 9 months after the facts that they reference in their *Complaint* regarding the creation of the Emergency List.[13]

b. **Execution of the *October 1, 2021 MOU*[14] and Creation of Extra List 5**

Plaintiffs were also not bargaining unit members when the *MOU* was executed. Persons who worked as Clerks and Checkers on the Emergency List were required to execute a waiver of seniority rights as a condition of employment.[15] Thereafter, the *MOU* was executed and became effective on October 1, 2021.[16] Despite the signed waivers of the workers on the Emergency List, the *MOU* by its terms created an Extra List 5, which was made up of workers who were on the Emergency List who accumulated 700 hours during CY 2020-2021.

c. **Creation of Extra List 6 in CY 2021-2022**

Local 1475 created an Extra List 6 after the beginning of CY 2021-2022, which includes Plaintiffs proposed class. During CY 2021-2022, Extra List 5 had hiring preference over Extra List 6 per the *MOU* and were dispatched ahead of them for hiring purposes.

d. **Creation of Class HH**

Following the end of CY 2021-2022, a Class HH was created, which comprised those workers from Extra List 5 and Extra List 6 who accumulated 700 hours during CY 2021-2022.[17]

---

[11] Doc. 1, *Complaint*, P. 14, ¶65.
[12] Doc. 1, *Complaint*, P. 14, ¶65.
[13] Doc. 1, *Complaint*, P. 14, ¶65.
[14] RJN, Ex. F: As the plain terms of the *MOU* show, the *MOU* dealt with a host of issues besides the Emergency List and Extra List 5, including predominately the integration of a group of workers (Deck and Dock) who previously had their own separate seniority plan, into the *ILA Local 1475 Savannah Clerks and Checkers Seniority Plan*.
[15] Doc. 1, *Complaint*, P. 14, ¶64.
[16] Doc. 1, *Complaint*, P. 15, ¶67.
[17] Doc. 1, *Complaint*, P. 15, ¶¶68-69.

To put that into context, Emergency List workers (*because of the waiver*) worked 700 hours during CY 2020-2021 to get on Extra List 5 per the *MOU*, and then had to work *another* 700 hours during CY 2021-2022 in order to be placed in Class HH. Whereas the Extra List 6 workers were only required to work 700 hours during one contract year - CY 2021-2022, in order to be in Class HH. That is, many workers on Extra List 5 had now worked 700 hours for 2 straight years both in CY 2020-2021 and CY 2021-2022, who absent the signed waiver, would have enjoyed letter card seniority over Extra List 6 workers who had only earned 700 hours in CY 2021-2022.

   e. **May 11, 2023 Membership Vote Ratifying the *Addendum***

The premise underlying the *Addendum*, the split of Class HH into two (2) subgroups, arose as a result of Local 1475 attempting to reach a reasonable good-faith negotiated resolution of a previously filed NLRB case in Case 10-CB-288927.[18] In response to that charge, the *Addendum* language was crafted, and the membership, upon reviewing the language, voted to split the HH group into two subgroups, whereupon the charging party in that case withdrew the charge.[19]

Plaintiffs concede that: (1) Local 1475 conducted a membership ratification vote regarding the split of Class HH into HH1 and HH2 Subclasses;[20] (2) the membership of Local 1475 voted and determined that the split *should* occur;[21] and (3) that after the ratification vote, the *Addendum* was entered into by the GSA.[22] Plaintiffs do not state what union entity agreed to the *Addendum*. In fact, the *Addendum* was agreed to by the GSA and the District, neither of which are a party here.

---

[18] *RJN*, Ex. D : "That case, and others before the Agency stemmed at least in part from the Union creating an "emergency" or "off the street list" in 2019 and 2020 to address an overwhelming need for workers. The Local's creation of that list was found not unlawful by an ALJ in Case 10-CB-266481. Also, in prior cases 10-CB249493 and 10-CB-258733 the question of whether the emergency/off the street list was secret was previously raised and found without merit."
[19] *RJN*, Ex. D ; and Ex. G.
[20] Doc. 1, *Complaint*, P. 17, ¶78.
[21] Doc. 1, *Complaint*, P. 17, ¶79.
[22] Doc. 1, *Complaint*, P. 15, ¶71.

## II.    PROCEDURAL HISTORY

Plaintiff Amanda Hammond previously brought an unfair labor practice charge with the National Labor Relations Board ("NLRB") based on the same set of factual circumstances in the instant *Complaint*. On December 18, 2023, the NLRB dismissed the charge, finding that:

> "The charge alleges that the Union has violated 8(b)(1)(A) and (2) by operating a hiring hall in manner that is arbitrary, discriminatory, or in bad faith, by splitting the HH seniority group into two sub-groups. However, the investigation failed to establish a violation of 8(b)(1)(A) or (2) of the Act as alleged. Under the totality of the presented facts and circumstances disclosed during the investigation, the Union's actions of proposing a change in the hiring hall procedures that split the HH seniority group into two sub-groups was not arbitrary, discriminatory, or in bad faith, but was based on neutral considerations. In particular, in the instant matter the Union's method of determining seniority was presented to the membership, and the new procedure was approved by a majority of the members who voted. The change to the hiring hall procedures was not so far outside the wide range of reasonableness afforded to labor organization when administering their duties as to be deemed arbitrary or irrational. While you contest the inclusion of certain individuals in the group, the Union interpreted the language of the Addendum approved by the membership, and concluded the language does not specify that employees must have signed a waiver to qualify for HH1, only that they were referred under the emergency list provisions. There is no evidence that this interpretation is arbitrary or invidious. Finally, to the extent you allege that creation and/or population of the emergency list in or about 2019/2020 was unlawful, Section 10(b) precludes the issuance of complaint based upon any unfair labor practice occurring more than six months prior to the filing of the charge. Based on the foregoing, the Union's proposed revisions to the hiring hall procedure was not a breach of the Union's duty of fair representation. For these reasons, I am refusing to issue complaint in this matter."[23]

Thereafter, Plaintiff Hammonds filed an appeal from the Region's decision to the NLRB's Office of General Counsel on or about December 29, 2023. On January 23, 2024, the NLRB's Office of General Counsel denied the appeal, finding in substantive part that:

> "The charge alleges that the Union violated Sections 8(b)(1)(A) and (2) of the National Labor Relations Act by operating a hiring hall in a manner that is arbitrary, discriminatory, or in bad faith, by splitting the HH seniority group into two subgroups in a 2023 MOU. On appeal, you argue that the composition of the emergency/off the street list that gave rise to the two HH subgroups was unlawful because friends and family of local union leadership were placed on the list, and

---

[23] *RJN*, Ex. B.

that this information was allegedly concealed from members who voted to approve the HH subgroups addressed in the MOU. Previous litigation and facts presented before this Agency belie this notion, and further support that members did or should have known of the emergency/off the street list and those on it well before the six months prior to filing of the instant charge, as well as at the time they voted for the two HH subgroups. The two HH subgroups arose as a result of the Union trying to reach a resolution of Case 10-CB-288927. In response to that charge, the Union crafted MOU language and the membership, upon reviewing the language, voted to split the HH group into two subgroups, whereupon the charging party in that case withdrew the charge. That case, and others before the Agency stemmed at least in part from the Union creating an "emergency" or "off the street list" in 2019 and 2020 to address an overwhelming need for workers. The Local's creation of that list was found not unlawful by an ALJ in Case 10-CB-266481. Also, in prior cases 10-CB249493 and 10-CB-258733 the question of whether the emergency/off the street list was secret was previously raised and found without merit.  It is further noted that the charging party in the instant case provides some names of "friends and/or family" of local union leaders who were on the emergency/off the street list to essentially support allegations of nepotism; however, the overall list was as large as about 200 individuals. In sum, evidence supports that the two HH subgroups were created in response to the Union's good-faith attempt to address litigation, and not for unlawful reasons."[24]

In considering this *Motion*, the Court can consider "the substance of the pleadings and any judicially noticed facts."[25] Here, the *Seniority Plan*; the *10/01/21 MOU*; and the *06/01/23 Addendum* are all relied upon in the *Complaint* and their contents are not in dispute.[26] Additionally, the NLRB charge; dismissal letter; appeal; and appeal denial are all documents drafted by a federal agency and are public records.[27] Thus, the Court may consider these exhibits, the validity of which are beyond dispute, without converting the motion to one for summary judgment under Fed. R. Civ. P. 56(c). Accordingly, Local 1475 asks the Court to take judicial notice of these documents here and in its concurrently filed *Request for Judicial Notice*.[28]

---

[24] *RJN*, Ex. D.
[25] Carson v. Monsanto Co., 508 F. Supp. 3d 1369, 1373 (S.D. Ga. 2020), citing Andrx Pharms., Inc. v. Elan Corp., PLC, 421 F.3d 1227, 1232-33 (11th Cir. 2005).
[26] Halmos v. Bomardier Aerospace Corp., 404 F. App'x 376, 377 (11th Cir. 2010) (explaining "there is support in case law 'for considering evidence outside the pleadings in connection with a motion to dismiss if the evidence is specifically relied upon in the complaint and its contents are not in dispute.'")
[27] NLRB v. Sears, Roebuck & Co., 421 U.S. 132 (1975).
[28] Coney v. Lampp, 2018 U.S. Dist. LEXIS 172719 (S.D. Ga., Oct. 5, 2018); and Bradley v. Devos, 2020 U.S. Dist. LEXIS 167709 (S.D. Ga., June 4, 2020).

### III.  LEGAL STANDARD

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), the *Complaint* must sufficiently "state a claim upon which relief can be granted."[29] Defendants must have "fair notice of what the claim is and the ground upon which it rests."[30] More to the point, claims must be supported by factual allegations that, along with reasonable inferences drawn from those factual allegations, plausibly give rise to a claim for relief.[31] In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true well-pleaded factual allegations, and view them in the light most favorable to the non-moving party.[32] Unsupported or conclusory allegations, or "naked assertions devoid of further factual enhancement" will doom a complaint.[33]

Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[34] "This standard does not require a party to plead facts with such particularity to establish a significant probability that the facts are true, rather, it requires a party's pleading of facts to give rise to a 'reasonable expectation that discovery will reveal evidence [supporting the claim].'"[35] At minimum, the complaint must contain more than "an unadorned, the defendant unlawfully harmed me accusation,"[36], and must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,'"[37] Dismissal under Rule 12(b)(6) is also permitted "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."[38]

---

[29] Fed. R. Civ. P. 12(b)(6).
[30] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation and modification omitted).
[31] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).
[32] Miree, 433 U.S. at 27 n.2.
[33] Id. (citing and quoting Twombly, 550 U.S. at 557 (internal quotations omitted)).
[34] Twombly, 550 U.S. at 555, 127 S.Ct. 1955.
[35] Burch v. Remington Arms Co., No. 2:13-cv-00185, 2014 WL 12543887, at *2 (N.D. Ga. May 6, 2014) (alteration in original) (quoting Twombly, 550 U.S. at 556, 127 S.Ct. 1955).
[36] Iqbal, 556 U.S. at 678, 129 S.Ct. 1937
[37] Traylor v. P'ship Title Co., 491 F. App'x 988, 990 (11th Cir. 2012).
[38] Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist., 992 F .2d 1171, 117 4 (11th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 326--27 (1989) (Rule 12 allows a court "to dismiss a claim on the basis of a dispositive issue of law").

IV.    ARGUMENT

    **a. Plaintiffs' Claims are Time Barred Under the Applicable Statute of Limitations**

The statute of limitations in a breach of duty of fair representation claim is six months.[39] The Court must analyze the Plaintiffs' *Complaint* to see what actions Local 1475 allegedly took within the six (6) months prior to the filing of the *November 9, 2023 Complaint*, or from May 9, 2023 to November 9, 2023. Here, the gravamen of Plaintiffs' *Complaint* alleges that the creation and/or population of the Emergency List in 2019/2020 was a breach of Local 1475's duty of fair representation. The only factual allegation in the *Complaint* during the six (6) month lookback time frame is the membership vote ratifying the *Addendum* which happened on May 11, 2023.[40]

However, based on the allegations of the *Complaint*, the May 11, 2023 membership vote for the *Addendum* and the split of the HH Class can arguably only be found to be a breach of Local 1475's duty of fair representation if this Court were to find that an earlier breach of Local 1475's duty had occurred when the Emergency List was created in CY 2019-2020. The central premise of Plaintiffs unfair representation theory is that the membership's collective decision was tainted by the creation of the Emergency List several years before.

As the Court held in *Bryan Manufacturing Co.*, where a complaint based upon an earlier event is time-barred, to permit the event to be so used in effect results in reviving a legally defunct unfair labor practice.[41] Therefore, per that logic, not only is the claims regarding the Emergency List barred, any claims regarding the membership vote ratifying the *Addendum* are also time barred because claims regarding this decision by the Local 1475 membership can be charged to be a breach of the duty of fair representation only through reliance on the events from the creation of the Emergency List. Therefore, there are no facts alleged which are not barred by the six-month statute of limitations. Accordingly, Plaintiffs' claim should be dismissed as time barred.

---

[39] DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164 (1983).
[40] Doc. 1, *Complaint*, P. 17, ¶78.
[41] Machinists Local Lodge 1424 v. Board (Bryan Manufacturing Co.), 362 U.S. 411, 416-417 (1960).

**b. Plaintiffs Inadequately Plead the Elements of Their Fair Representation Claim.[42]**

Even if the Court were to determine that the May 11, 2023 membership vote ratifying the *Addendum* was an action that falls within the six month limitations period, the *Complaint* should still be dismissed for failure to state a claim upon which relief can be granted because there are no facts pled regarding the membership vote which raise the claims above the speculative level.

A union's actions may be found to have been arbitrary only where, "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational."[43] "This 'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong."[44] As one court has noted, neither bad faith nor arbitrariness is demonstrated by proving the union "swapped" a concession on another issue if the swap of the contract terms was motivated by a good faith balancing of the burden to the individual and benefit to others in the Union.[45]

    **i. The *Complaint* Must Be Dismissed as Plaintiffs Fail to Plausibly Allege Arbitrary, Capricious, or Bad Faith Conduct on behalf of Local 1475**

In order to establish that Local 1475 has breached its duty of fair representation, the burden of proof on Plaintiffs is substantial. Plaintiffs must show that Local 1475 "acted in the absence of honest purpose and judgment or the presence of hostility or discrimination."[46] Furthermore, the "proof of unfair representation must demonstrate substantial evidence of fraud, deceitful action or dishonest conduct. Subjective suspicions are insufficient to support a finding of bad faith" and

---

[42] Oltmanns v. Int'l Longshoremen's Ass'n Local 1475 Clerks & Checkers Union, Inc., CIVIL ACTION NO.: 4:18-cv-188, 2019 U.S. Dist. LEXIS 112768, at *18 (S.D. Ga. July 8, 2019), aff'd, 837 F. App'x 689 (11th Cir. 2020) (unpublished).
[43] Air Line Pilots Assoc. v. O'Neill, 499 U.S. 65, 67 (1991).
[44] Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 45 (1998).
[45] International Longshoremen's and Warehousemen's Union, Local 13 v. Pacific Maritime Association, 441 F.2d 1061, 77 LRRM 2160 (9th Cir. 1971), cert. denied, 404 U.S. 1061 (1972).
[46] Freeman v. O'Neal Steel, Inc., 609 F.2d 1123, 1128 n. 9 (5th Cir. 1980).

discrimination in violation of the duty of fair representation must be shown through "substantial evidence" and must be "intentional, severe, and unrelated to legitimate union objectives."[47]

Local 1475's actions of proposing a change in the hiring hall procedures that split the HH seniority group into two (2) sub-groups was not arbitrary, discriminatory, or in bad faith, but was based on neutral considerations. The two (2) HH subgroups were created in response to Local 1475's good faith attempt to address previous issues within the hiring system, and not for unlawful reasons.[48] In the instant case Local 1475's method of determining seniority was presented to the membership, and the new procedure was approved by a majority of the members who voted.[49]

An *Addendum* that was **ratified by a membership vote** cannot be so far outside the range of reasonable so as to be "irrational".[50] As with any decision regarding seniority, there are always winners and losers, and the fact that some people are hurt by a seniority amendment such as the *Addendum* does not make it a duty of fair representation violation. The allegations in the *Complaint* do not support the finding that Local 1475's conduct was arbitrary, discriminatory, or in bad faith.

### 1. Even without a Membership Vote, the HH Split was in Good Faith

Even if Local 1475 had taken the position that the two (2) HH subgroups should be split without a membership vote, the actions would not have violated its duty of fair representation. Here, the group of Emergency List workers who formed Extra List 5 arguably earned higher seniority than Plaintiffs who came to the bargaining unit a year later. The workers on HH1 worked and made themselves available for work in an emergency capacity to fill the labor needs of Local 1475 during CY 2020-2021 and many of them worked over 700 hours for several contract years.

---

[47] Amalgamated Ass'n of Street Employees v. Lockridge, 403 U.S. 274, at p. 299 and p. 301, (1971).
[48] *RJN*, Ex. B and Ex. D.
[49] Doc. 1, *Complaint*, P. 15, ¶71 ; and P. 17, ¶¶78-79.
[50] Deboles v. Trans World Airlines, Inc., 552 F.2d 1005, 1014 (3d Cir. 1977); and Parker v. Connors Steel Co., 855 F.2d 1510, 1524 (11th Cir. 1988).

### 2. Local 1475's Interpretation of the *Addendum* was in Good Faith

Plaintiffs allege that 30 persons who appear on the Emergency List and who are now in HH1 earned less than 700 credited hours during CY 2020-2021.[51] However, there is no indication in the *Complaint* why such an interpretation of the *Addendum* is arbitrary. While Plaintiffs' contest the inclusion of certain individuals in the group, Local 1475 interpreted the language of the *Addendum* approved by the membership, and concluded the language does not specify that employees must have signed a waiver to quality for HH1, only that they were referred under the Emergency List provisions.[52] There is no evidence that this interpretation is arbitrary or invidious.

Local 1475's actions were taken honestly, in good faith and without hostility or arbitrary discrimination. In following the negotiated *Addendum*, Local 1475 has acted upon wholly relevant considerations, not upon capricious or arbitrary factors. Whenever one worker is given increased rights, the acquisition of such rights often conflicts with the economic interests of other workers. This unfortunate consequence does not preclude agreements such as the *Addendum*. Local 1475 is allowed considerable latitude in its representation of employees.[53]

### ii. Allegation Local 1475 Arbitrarily and Capriciously Persuaded GSA[54]

Plaintiffs allege Local 1475 arbitrarily and capriciously "persuaded the Georgia Stevedore Association to agree to divide Class HH into two subclasses…"[55] There are no allegations of fact in the *Complaint* setting forth the actions Local 1475 took from May 9, 2023 to June 1, 2023, when the *Addendum* was signed by GSA, that persuaded the GSA to sign it or how these actions could have violated Local 1475's duty of fair representation to the bargaining unit members. The *Complaint* is deficient in this respect and does not state a claim for which relief can be granted.

---

[51] Doc. 1, *Complaint*, P. 17, ¶81.
[52] RJN, Ex. D.
[53] Harris v. Schwerman Trucking Co., 668 F.2d 1204, 1206-1207 (11th Cir. Ala. 1982) (citations omitted).
[54] Doc. 1, *Complaint*, P. 18, ¶87.
[55] Doc. 1, *Complaint*, P. 18, ¶85.

### iii. Allegation that Local 1475 Misrepresented Material Facts[56]

Plaintiffs allege Local 1475 arbitrarily and capriciously "*misrepresented material facts*" prior to the ratification vote. The membership vote ratifying the *Addendum* happened on May 11, 2023.[57] The end of the six-month statute of limitations look back period was May 9, 2023. There is no allegation of fact presented in the *Complaint* setting forth the actions Local 1475 is alleged to have taken from May 9, 2023 to May 11, 2023 that "*misrepresented material facts*" and therefore Plaintiffs' *Complaint* regarding this allegation fails to state a claim.

Additionally, as the NLRB found, the membership had sufficient information to support its decision.[58] Plaintiffs did or should have known of the Emergency List and those on it,[59] well before the six (6) months prior to the filing of the instant *Complaint*, as well as at the time they voted for the split. Plaintiffs (HH2) have worked alongside the workers in the HH1 group since as early as CY 2021-2022. They all work out of the same hiring hall. They all work on the Port of Savannah doing the same work. It strains the imagination for Plaintiffs, who were on Extra List 6, to now allege that they did not know who was on Extra List 5 when they voted on May 11, 2023.

Even if the allegations of the *Complaint* were read to allege that the composition of the Emergency List that gave rise to the two (2) HH subgroups was unlawful because friends and family of Local 1475 leadership were placed on the list, and that this information was allegedly concealed from members who voted to approve the HH subgroups addressed in the *Addendum* from May 9, 2023 to May 11, 2023, the claim still fails to state a claim upon which relief can be granted because without questioning each member as to the basis for his or her vote, the Court would have no way of knowing whether any alleged misrepresentation affected the vote.

---

[56] Doc. 1, *Complaint*, P. 18, ¶89.
[57] Doc. 1, *Complaint*, P. 17, ¶78.
[58] *RJN*, Ex. D.
[59] Benson v. General Motors Corp., 716 F.2d 862, 864 (11th Cir. Ala. 1983): the Eleventh Circuit holds that the limitations period begins to run when the Plaintiff is aware or should have been aware of the injury itself.

>    iv. **Allegations that Local 1475 Arbitrarily and Capriciously "divided Class HH into two subclasses…";[60] and "required that all members of Class HH-1 be offered work before any member of Class HH-2 is offered work…"[61]**

These conclusory allegations appear to indicate that the Plaintiffs are alleging that Local 1475 implemented the *Addendum*, after the NLRB approved the request to withdraw the charge in Case 10-CB-288927 conditioned on the performance of the settlement agreement which was previously ratified by a membership vote and approved by the GSA and the District,[62] and that this action of implementing the *Addendum* somehow violated Local 1475's duty of fair representation. However, Plaintiffs' *Complaint* is devoid of facts describing what acts of Local 1475, other than implementing the *Addendum*, violate its duty and the claims should be dismissed.

## V.    Conclusion

For the foregoing reasons, based upon the facts and applicable law stated herein, Local 1475 respectfully prays that its *Motion* be granted and that Plaintiffs' *Complaint* against it be dismissed with prejudice, with all costs assessed against Plaintiffs, and for such other and further relief as this Honorable Court deems just and proper.

Respectfully submitted this 29th day of January, 2024.

                        **CHARLES HERMAN LAW**

                        /s/ Charles Herman
                        Charles Herman
                        Georgia Bar No. 142852
                        ***Attorney for Defendant ILA Local 1475***

2 East Bryan Street, 4th Floor
Savannah, Georgia 31401
(912) 244-3999
(912) 257-7301 Facsimile
charles@charleshermanlaw.com

---

[60] Doc. 1, *Complaint*, P. 18, ¶86.
[61] Doc. 1, *Complaint*, P. 18, ¶88.
[62] *RJN*, Ex. D : "That case, and others before the Agency stemmed at least in part from the Union creating an "emergency" or "off the street list" in 2019 and 2020 to address an overwhelming need for workers. The Local's creation of that list was found not unlawful by an ALJ in Case 10-CB-266481. Also, in prior cases 10-CB249493 and 10-CB-258733 the question of whether the emergency/off the street list was secret was previously raised and found without merit."; and *RJN*, Ex. G: showing approval by the District and GSA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| Lauren Dodd, et al, ) | |
| ) | |
|    Plaintiffs, ) | |
| v. ) | Case No. 4:23-cv-00327-RSB-CLR |
| ) | |
| International Longshoremen's Association ) | |
| and International Longshoremen's ) | |
| Association Local 1475 Clerks and Checkers ) | |
| Union, Inc.; ) | |
| ) | |
|    Defendants. ) | |

### *CERTIFICATE OF SERVICE*

      The undersigned certifies that I have on this day served all the parties in this case with this *Motion to Dismiss* in accordance with the notice of electronic filing ("NEF") which was generated as a result of electronic filing in this court.

      This 29th day of January, 2024.

                                            **CHARLES HERMAN LAW**

                                            /s/ Charles Herman
                                            Charles Herman
                                            Georgia Bar No. 142852
                                            ***Attorney for Defendant ILA Local 1475***

2 East Bryan Street, 4th Floor
Savannah, Georgia 31401
(912) 244-3999
(912) 257-7301 Facsimile
charles@charleshermanlaw.com