IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| LAUREN DODD, RICHARD SMITH, AND AMANDA HAMMOND, On behalf of themselves individually and on behalf of all others similarly situated, Plaintiffs, vs. INTERNATIONAL LONGSHOREMAN'S ASSOCIATION AND INTERNATIONAL LONGSHOREMAN'S ASSOCIATION LOCAL 1475, Defendants. | Civil Action No. 4:23-cv-00327-RSB-CLR |

**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiffs submit the following response in opposition to International Longshoreman's Association Local 1475's ("Local 1475") Motion to Dismiss [Dkt. 11].

**FACTUAL SUMMARY AND PROCEDURAL STATUS**

This is a duty of fair representation ("DFR") case. Plaintiffs are a group of Clerks and Checkers who perform work at the Port of Savannah pursuant to a collective bargaining agreement between Defendants and the Georgia Stevedore Association.[1] The Defendants are the International Longshoreman's Association (hereafter "the ILA") and International Longshoreman's Local 1475 (hereafter "Local 1475"). The ILA is an international labor organization that represents a bargaining unit comprised

---

[1] Class Action Complaint for Violation of the Duty of Fair Representation ("Complaint"), Dkt. 1, ¶1

of Clerks and Checkers who perform work at the Port of Savannah.[2] Local 1475 is a local labor organization that, in conjunction with the ILA, represents the Clerks and Checkers at the Port of Savannah for the purposes of collective bargaining under the National Labor Relations Act.[3]

Local 1475 has moved to dismiss Plaintiffs' Complaint on two grounds: (1) that it is time barred and (2) that it is inadequately pled.[4] In Support of that Motion, Local 1475 filed a Brief[5] and a request for Judicial Notice.[6] Local 1475's Brief asserts facts it did not argue. [Dkt. 12, pp. 1-14] Nor did it argue the relevance or materiality of the documents it asks this Court to take judicial notice of. [Dkt. 13] Plaintiffs address their response, therefore, to the grounds stated in Defendant's Motion and the arguments set forth in its Brief.

In summary, Plaintiffs alleged that the ILA and Local 1475 urged the Georgia Stevedore Association to enter into an agreement that split the job assignment classification to which Plaintiffs are assigned to (*i.e.,* Class HH) into two Subclasses, (*i.e.*, HH1 and HH2). Under this agreement and as of June 19, 2023, a cohort largely composed of the family and friends of Local 1475 leaders were placed in a new job assignment classification known as Subclass HH1. Consequently, they were afforded favorable job assignment preference at the expense of the Subclass HH2 members, resulting in a dramatic loss of pay and benefits to the members of Subclass

---

[2] Complaint, ¶8
[3] Complaint, ¶9
[4] [Dkt. 11]
[5] [Dkt. 12]
[6] [Dkt. 13]

HH2. These actions violated the unions' duty of fair representation to the Proposed Class.[7]

**PERTINENT FACTS**

- The ILA and Local 1475 are parties to a collective bargaining agreement with the Georgia Stevedore Association (hereafter "the CBA") governing the rates of pay, rules, and working conditions for persons working as Clerks and Checkers at the Port of Savannah.[8]

- Local 1475 operates a hiring hall wherein it assigns work to Clerks and Checkers in accordance with the order set forth in the CBA and referred to as the "Savannah Clerks and Checkers Seniority Plan" (hereafter "the Plan"). [9]

- Under the Plan, Clerks and Checkers are grouped together into divisions known as Classes. [10]

- Under the Plan, each Class is comprised of Clerks and Checkers who first achieved at least 700 hours of work in a specific "contract year," and who maintained 700 hours of work in each contract year thereafter. [11]

- The requirement to work at least 700 hours in order to establish seniority is set forth in Article XXIII, Section 18 of the ILA Constitution, which states:

  Every local union shall have a seniority system requiring a minimum of

  700 work hours or credited hours to establish a year of service. Such

---

[7] Complaint, ¶2
[8] Complaint, ¶26
[9] Complaint, ¶27
[10] Complaint, ¶28
[11] Complaint, ¶29

seniority system based on years of service shall be used to determine priority of employment for hiring purposes. . . . [12]

- Under the Plan, a contract year begins each October 1st and ends on the following September 30th. [13]

- Contract years are designated by the calendar years they straddle, *e.g.*, 2023-2024. [14]

- The various Classes created under the Plan form a seniority-based system for assigning Clerk and Checker work at the Port of Savannah. [15]

- Under the Plan, Defendants offer available work to all members of a Clerks and Checkers Class before work is offered to Clerks and Checkers in the subsequent class. [16]

- During contract year 2020-2021, there was an unusual expansion of Clerk and Checker work at the Port of Savannah creating a temporary demand for additional Clerks and Checkers. [17]

- The ILA, Local 1475 and the Georgia Stevedore Association responded to this increased demand for Clerks and Checkers through the creation of an "Emergency List" of new workers. [18]

---

[12] Complaint, ¶30
[13] Complaint, ¶31
[14] Complaint, ¶32
[15] Complaint, ¶33
[16] Complaint, ¶34
[17] Complaint, ¶35
[18] Complaint, ¶36

- Before making the Emergency List known to the members of the bargaining unit, Local 1475 leaders recruited family and friends to become Clerks and Checkers under the Emergency List. [19]

- In their Complaint, Plaintiffs identified 22 persons and detailed their relationships with officers of Local 1475. [20]

- In summary, Local 1475 leaders populated the Emergency List in large part with family and friends before the existence of the Emergency List was made generally known to the members of the bargaining unit.[21]

- At a Local 1475 membership meeting in February 2021, members asked Local 1475 leaders about the Emergency List. [22]

- In response to questions raised at the February 2021 membership meeting and after populating the Emergency List with their friends and family, Local 1475 leaders made the list available to others provided they sign up in person at a location within the Port of Savannah during a single four-hour period occurring two days after the membership meeting. [23]

- Only those persons with valid Port of Savannah credentials could access the location where the Emergency List signup occurred. [24]

---

[19] Complaint, ¶37
[20] Complaint, ¶¶38-59
[21] Complaint ¶60
[22] Complaint ¶61
[23] Complaint ¶62
[24] Complaint ¶63

- The ILA and Local 1475 required persons who worked as Clerks and Checkers on the Emergency List to execute a waiver of seniority rights as a condition of employment. [25]

- Consequently, Emergency List members who performed Clerk and Checker work in the 2020-2021 contract year had no seniority preference over the members of the Proposed Class who all first performed Clerk and Checker work during the 2021-2022 contract year. [26]

- Local 1475 placed approximately 200 persons on the Emergency List. [27]

- The ILA, Local 1475 and the Georgia Stevedore Association executed a Memorandum of Understanding on October 11, 2021 (hereafter "the 2021 MOU").[28]

- Under the 2021 MOU, classification HH was comprised by "individuals who worked at least 700 combined hours in the 2021-2022 contract year. [29]

- Prior to June 19, 2023, Classification HH consisted of Clerks and Checkers who first performed work in the 2021-2022 contract year, and Clerks and Checkers who first performed work under the Emergency List. [30]

- Beginning in February 2023, the amount of available Clerk and Checker work at the Port of Savannah declined. [31]

---

[25] Complaint ¶64
[26] Complaint ¶65
[27] Complaint ¶66
[28] Complaint ¶67
[29] Complaint ¶68
[30] Complaint ¶69
[31] Complaint ¶70

- In the Spring of 2023, at the urging of the ILA and Local 1475, the Georgia Stevedore Association entered into a Memorandum of Understanding (hereafter "the 2023 MOU") with Defendants that subdivided Class HH in to two Subclasses designated as HH1 and HH2. [32]

- The 2023 MOU defined Subclass HH1 as:

  All individuals who worked at least 700 hours through the Local 1475 hiring system during both the 2020-21 and 2021-22 Contract Years, and all individuals who were on an emergency list during the 2020-21 Contract Year and worked at least 700 hours through the Local 1475 hiring system during the 2021-22 Contract Year. [33]

- The 2023 MOU defined Subclass HH2 as:

  All other individuals who worked at least 700 hours through the Local 1475 hiring system during the 2021-22 Contract Year. [34]

- The 2023 MOU further provided:

  For purposes of hiring preference within in the HH classification, all members of the Sub-classification HH-1 will be referred work they are qualified to perform before any jobs are offered to members of Sub-classification HH-2.[35]

- Prior to the ratification vote on the 2023 MOU, Local 1475 leaders failed to disclose that they had populated the Emergency List, and hence the new Subclass

---

[32] Complaint ¶71
[33] Complaint ¶72
[34] Complaint ¶73
[35] Complaint ¶74

HH1, with their family and friends. [36]

- The ILA and Local 1475 demonstrated favoritism for the family and friends of Local 1475 leaders by negotiating and implementing the 2023 MOU.[37]

- The ILA and Local 1475 demonstrated favoritism for the family and friends of Local 1475 leaders by failing to disclose that the Emergency List was populated in large part by the family and friends of Local 1475 leaders. [38]

- On May 11, 2023, Local 1475 conducted a single day ratification vote of the 2023 MOU. [39]

- On May 11, 2023, the membership of Local 1475 ratified the 2023 MOU. [40]

- On June19, 2023, the ILA and Local 1475 effectuated the division of Class HH into the subclassifications HH-1 and HH-2. [41]

- Approximately 30 persons who appear on the Emergency List and who are now assigned to Subclass HH1 performed less than 700 work hours or credited hours during the 2020-2021 contract year. [42]

- As a direct and foreseeable result of this division, the amount of work available of members of Class HH-1 increased substantially. [43]

- As a direct and foreseeable result of this division, the amount of work available

---

[36] Complaint ¶75
[37] Complaint ¶76
[38] Complaint ¶77
[39] Complaint ¶78
[40] Complaint ¶79
[41] Complaint ¶80
[42] Complaint ¶81
[43] Complaint ¶82

to members of Class HH-2 declined substantially. [44]

## LEGAL STANDARDS: "TWIQBAL" AND THE STANDARDS GOVERNING A MOTION TO DISMISS GENERALLY

As Judge Clay Land in the Middle District of Georgia has wryly noted, "*Twombly and Iqbal* have wrought. . . a compulsion to file a motion to dismiss in every case" *Meyer v. Snyders Lance, Inc. (CDL), CASE NO. 4:12-CV-215* (*CDL*), 2012 U.S. Dist. LEXIS 175537, at \*1 (M.D. Ga. Dec. 12, 2012). Defendants' pending Motion to Dismiss is another example of this "*Twiqbal*" compulsion.

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955 (2007); Fed. R. Civ. P. 12(b)(6). The plaintiff only needs to give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)); Fed. R. Civ. P. 8(a). In ruling on a motion to dismiss, the court must accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). A plaintiff is not required to provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

---

[44] Complaint ¶37

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at 555, 127 S. Ct. 1955. The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. *Id.* at 556, 127 S. Ct. 1955.

## PLAINTIFFS HAVE SUFFICIENTLY ALLEGED THEIR DUTY OF FAIR REPRESENTATION CLAIMS

### (a) Plaintiffs' Claims Are Not Barred by the Statute of Limitations

The statute of limitations for a duty of fair representation claim is six months. However, facts leading up to the Defendants' breach of their duty extend beyond six months are relevant to Plaintiffs' cause of action.

In the Spring of 2023, at the urging of the ILA and Local 1475, the Georgia Stevedore Association entered into a Memorandum of Understanding (hereafter "the 2023 MOU") with Defendants that subdivided Class HH in to two Subclasses designated as HH1 and HH2.[45] The original Class HH had indeed been created as part of the "Emergency List" process in CY 2019-2020.

Local 1475 argues that because the HH class existed before the statute of limitations, the 2023 MOU/Addendum that Local 1475 offered for membership ratification on May 11, 2023—within the statute of limitations—division of Class HH into HH1 and HH2 is time barred. In doing so, Local 1475 misconstrues

---

[45] Complaint, ¶71 (Plaintiffs referred to the ratification of the list split as the 2023 MOU in their Complaint. The Defendants refer to this agreement as the Addendum but regardless, as the Defendant acknowledges, "The premise underlying the Addendum, the split of Class HH into two (2) subgroups. . ." (Dkt. 12, p. 4)

*Machinists Local Lodge 1424 v. Board (Bryan Manufacturing Co.),*[46] the primary case on which it bases its argument. The holding in *Bryan Manufacturing* actually demonstrates that Plaintiffs have brought this claim within the statute of limitations. In *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983); the Court borrowed the NLRA six-month limitation period applicable to unfair labor practice charges and applied it to DFR cases.[47] The Court's discussion of the NLRA limitation is thus relevant to Local 1475's assertion that Plaintiffs' DFR claim is time barred.

In *Bryan Manufacturing*, the company and the union had entered into an arguably unfair labor practice that occurred more than six months before the NLRB filed its unfair labor practice charge.[48] The NLRB contended that "that its complaint was nonetheless timely since it was "based upon" the parties' continued enforcement, within the period of limitations, of the [unfair labor practice].[49]

The Supreme Court distinguished between "two different kinds of situations":

> The first is one where occurrences within the six-month limitations period in and of themselves may constitute, as a substantive matter, unfair labor practices. There, earlier events may be utilized to shed light on the true character of matters occurring within the limitations period; and for that purpose § 10 (b) ordinarily does not bar such evidentiary use of anterior events. The second situation is that where ***conduct occurring within the limitations period can be charged to be an unfair***

---

[46] *Int'l Ass'n of Machinists v. NLRB*, 362 U.S. 411, 416 (1960)

[47] See 29 USC § 160 ("Provided . . . no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made . . . ."

[48] The specifics are that a "union security" agreement had been executed but the specifics are not material. *Id.* at 412

[49] *Int'l Ass'n of Machinists*, 362 U.S. at 415.

> ***labor practice only through reliance on an earlier unfair labor
> practice.*** There the use of the earlier unfair labor practice is not
> merely "evidentiary," since it does not simply lay bare a putative
> current unfair labor practice. Rather, it serves to cloak with
> illegality that which was otherwise lawful. And where a
> complaint based upon that earlier event is time-barred, to permit
> the event itself to be so used in effect results in reviving a legally
> defunct unfair labor practice[50].

The Court held that "Where, as here, a collective bargaining agreement and its

enforcement are both perfectly lawful on the face of things, and an unfair labor

practice cannot be made out except by reliance on the fact of the agreement's original

unlawful execution, an event which, because of limitations, cannot itself be made

the subject of an unfair labor practice complaint . . ."

That is not the situation here. This is not a situation where the claim can be made

"***only through reliance on an earlier unfair labor practice***" Plaintiffs claim is

illuminated by prior conduct, but the Supreme Court does not forbid that: "While the

6-month statute of limitations contained in 10(b) of the amended National Labor

Relations Act (29 U.S.C. § 160(b)) does not prevent all use of evidence relating to

events transpiring more than 6 months before the filing and service of an unfair labor

practice charge . . ." The Plaintiffs' claim is based on what happened within the

statute of limitation. Regardless of the legality of the early Emergency List creation

of the HH class, the May 11, 2023 ratification of the MOU/Addendum (splitting

---

[50]Id., *at* 411 (emphasis added)

Class HH into HH-1 and HH-2)—and its subsequent implementation— dramatically changed Plaintiffs' working condition. As Plaintiffs have alleged:

- Prior to the May 11, 2023 ratification vote on the 2023 MOU, Local 1475 leaders failed to disclose that they had populated the Emergency List, and hence the new Subclass HH1, with their family and friends. [51]

- The ILA and Local 1475 demonstrated favoritism for the family and friends of Local 1475 leaders by negotiating and implementing the 2023 MOU.[52]

- The ILA and Local 1475 demonstrated favoritism for the family and friends of Local 1475 leaders by failing to disclose that the Emergency List was populated in large part by the family and friends of Local 1475 leaders. [53]

- On June19, 2023, the ILA and Local 1475 effectuated the division of Class HH into the subclassifications HH-1 and HH-2. [54]

- As a direct and foreseeable result of this division, the amount of work available of members of Class HH-1 increased substantially. [55]

- As a direct and foreseeable result of this division, the amount of work available to members of Class HH-2 declined substantially. [56]

---

[51] Complaint ¶75
[52] Complaint ¶76
[53] Complaint ¶77
[54] Complaint ¶80
[55] Complaint ¶82
[56] Complaint ¶37

The May 11, 2023, ratification dramatically changed the situation. The ratification referendum constitutes—in and of itself—a breach of the duty of fair representation. As such, *Bryan Manufacturing* demonstrates that this suit was brought within the statute of limitations.

### (b) Plaintiffs Have Adequately Pled Their Complaint As a Matter of Law and Fact

***Local 1475 must represent all people and segments of its membership fairly because it has been given the power to be the exclusive bargaining agent for its members, including the plaintiffs.***

In 1967, the Supreme Court in *Vaca v. Sipes* recognized a union's duty of fair representation (DFR). This duty is based on the Union's statutory status as the exclusive bargaining agent:

> [T]he exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct. . . .[57]

Local 1475's 'DFR duties are akin to fiduciary duties. "The duty of fair representation is . . . akin to the duty owed by other fiduciaries to their beneficiaries," "the duty a trustee owes to trust beneficiaries," the duty an attorney owes clients, "the responsibilities of corporate officers and directors toward shareholders." "Just as these fiduciaries owe their beneficiaries a duty of care as well as a duty of loyalty,

---

[57] *Vaca v. Sipes*, 386 U.S. 171 (1967)

a union owes employees a duty to represent them adequately as well as honestly and in good faith."[58]

The standard is a "tripartite" one, such that "a union breaches its duty of fair representation if its actions are either 'arbitrary, discriminatory, or in bad faith.'"[59] In other words, a plaintiff only needs to show that the union's actions could be characterized in any one of these three ways.[60]

The Court of Appeals for the District of Columbia described the standard as follows:

> A union must conform its behavior to each of these three separate standards. First, it must treat ***all factions and segments of its membership*** without hostility or discrimination. Next, the broad discretion of the union in asserting the rights of its individual members must be exercised in complete good faith and honesty. Finally, the union must avoid arbitrary conduct. Each of these requirements represents a distinct and separate obligation, the breach of which may constitute the basis for civil action.[61]

A DFR claim is "an essential means of enforcing fully the important principle that 'no individual union member may suffer invidious, hostile treatment at the hands of the majority of his coworkers.'"[62]

---

[58] *Id.* (citing in part Restatement (Second) of Trusts § 174 (1959)).

[59] *Id.* at 67, 111 S. Ct. 1127, 113 L. Ed. 2d 51

[60] *Higdon v. United Steelworkers of Am.*, 706 F.2d 1561, 1563 (11th Cir. 1983)

[61] *Warehouse Union, Local 860, etc. v. NLRB*, 652 F.2d 1022, 1024 (D.C. Cir. 1981) (citing *Ruzicka v. Gen. Motors Corp.*, 523 F.2d 306, 309 (6th Cir. 1975)) (emphasis added)

[62] *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 79 (1989) (quoting *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. v. Lockridge, 40*3 U.S. 274, 301, 91 S. Ct. 1909, 29 L. Ed. 2d 473 (1971)).

### *Local 1475's Duty is Extensive*

A union must discharge its duty to fairly represent employees in broad circumstances. As the Supreme Court noted in *Electrical Workers (IBEW) v. Foust,* "[u]nder the doctrine a union must represent fairly the interest of ***all bargaining unit members*** during the negotiation, administration and enforcement of collective bargaining agreements." [63] To clarify, all Plaintiffs would have been in the bargaining unit when the 2023 MOU/Addendum was voted on even if they may not have been when the list was created.

### *The DFR forbids Arbitrary Decisions, Discriminatory Decisions, and Actions in Bad Faith.*

Plaintiffs acknowledge that a Union has a wide range of discretion in negotiating, administering, or enforcing a collective bargaining agreement.[64] However, that discretion and latitude are not unchecked. A Union must treat its members similarly without prejudice or favoritism. As the Court in *Vaca* held, labor laws are designed to ensure that "similar complaints will be treated consistently."[65]

According to the Fifth Circuit, to be non-arbitrary, a decision must be: "(1) based

---

[63] *Int'l Brotherhood of Elec. Workers v. Foust*, 442 U.S. 42 (1979)(emphasis added); See *Air Line Pilots v. O'Neill*, 499 U.S. 65 (1991)(Expressing doubt "that a bright line could be drawn between contract administration and contract negotiation" and "holding that the core nature of the duty is unchanged by the setting in which it is to be discharged." See Higgins, The Developing Labor Law, ABA Section of Labor and Employment, 5th ed., p. 2031 (2006)

[64] *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 67, 111 S. Ct. 1127, 113 L. Ed. 2d 51 (1991)(" Under the "arbitrary" prong, a union's actions breach the duty of fair representation "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational."

[65] "*See Vaca*, 386 U.S. at 191

upon relevant, permissible union factors which excludes the possibility of it being based upon motivations such as personal animosity or political favoritism; (2) a rational result of the consideration of those factors; and (3) inclusive of a fair and impartial consideration of the interests of all employees."[66]

A discriminatory practice is founded on "irrelevant, invidious, or unfair" motivations.[67] The Supreme Court in *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees v. Lockridge*, noted that the "doctrine . . . carries with it the need [if a breach of duty is to be shown] to adduce substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." [68]

As for the bad faith prong, there is a "demanding standard" of showing bad faith; the conduct must be "sufficiently egregious" or so "intentionally misleading" as to be "invidious" or as to evince a purpose to intentionally harm the membership.[69] Bad faith conduct has also been described as "the absence of honest purpose and judgment or the presence of hostility or discrimination" by the union.[70]

---

[66] *Tedford v. Peabody Coal Co.*, 533 F.2d 952, 957 (5th Cir. 1976), well before incorporation of preexisting case law by *Bonner v. Prichard*, 661 F.2d 1206 (11th Cir. 1981)

[67] *McCoy v. UNC Aviation Servs.*, 857 F. Supp. 1493, 149 (M.D.Al 1993) (citing *Breininger v. Sheet Metal Workers Intern.,* 493 U.S. 67, 73, 110 S. Ct. 424, 429, 107 L. Ed. 2d 388 (1989) (quoting *Miranda Fuel Co., Inc*., 140 N.L.R.B. 181 (1962), enf. denied, 326 F.2d 172 (2d Cir. 1963)).

[68] *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. v. Lockridge, 40*3 U.S. 274, 301 (1971)

[69] *See O'Neill v. Air Line Pilots Ass'n, Int'l*, 939 F.2d 1199, 1203-04 (5th Cir. 1991).

[70] *Freeman v. O'Neal Steel, Inc.*, 609 F.2d 1123, 1128 n.9 (5th Cir. 1980).

### *Plaintiffs Have "Plausibly" Pled a Claim for Relief*

As noted above, a complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. [71] A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[72]." Plaintiffs have provided more than a "plausible" claim in the allegations set in their Complaint (and repeated above). In more pertinent parts, Plaintiffs reference the following allegations.

- Before making the Emergency List known to the members of the bargaining unit, Local 1475 leaders recruited family and friends to become Clerks and Checkers under the Emergency List.[73]

- In their Complaint, Plaintiffs identified 22 persons and detailed their relationships with officers of Local 1475.[74]

- In summary, Local 1475 leaders populated the Emergency List in large part with family and friends before the existence of the Emergency List was made generally known to the members of the bargaining unit.[75]

- Local 1475 placed approximately 200 persons on the Emergency List. [76]

- In the Spring of 2023, at the urging of the ILA and Local 1475, the Georgia Stevedore Association entered into a Memorandum of Understanding

---

[71] *Bell Atl. Corp.*, 550 U.S. at 555-56, 127 S. Ct. 1955.
[72] *Ashcroft*, 556 U.S. at 678, 129 S. Ct. 1937.
[73] Complaint, ¶37
[74] Complaint, ¶¶38-59
[75] Complaint ¶60
[76] Complaint ¶66

(hereafter "the 2023 MOU") with Defendants that subdivided Class HH in to two Subclasses designated as HH1 and HH2.[77]

- Prior to the ratification vote on the 2023 MOU, Local 1475 leaders failed to disclose that they had populated the Emergency List, and hence the new Subclass HH1, with their family and friends.[78]

- The ILA and Local 1475 demonstrated favoritism for the family and friends of Local 1475 leaders by negotiating and implementing the 2023 MOU.[79]

- The ILA and Local 1475 demonstrated favoritism for the family and friends of Local 1475 leaders by failing to disclose that the Emergency List was populated in large part by the family and friends of Local 1475 leaders.[80]

- Approximately 30 persons who appear on the Emergency List and who are now assigned to Subclass HH1 performed less than 700 work hours or credited hours during the 2020-2021 contract year. [81] [To clarify, this fact demonstrates that Local 1475 even broke its own eligibility rules in creating the list.]

- As a direct and foreseeable result of this division, the amount of work available of members of Class HH-1 increased substantially.[82]

- As a direct and foreseeable result of this division, the amount of work available to members of Class HH-2 declined substantially.[83]

---

[77] Complaint ¶71
[78] Complaint ¶75
[79] Complaint ¶76
[80] Complaint ¶77
[81] Complaint ¶81
[82] Complaint ¶82
[83] Complaint ¶37

The following allegations were made:

- The ILA and Local 1475 **_arbitrarily_** and capriciously persuaded the Georgia Stevedore Association to agree to divide Class HH into two subclasses.[84]

- The ILA and Local 1475 **_arbitrarily_** and capriciously divided Class HH into two subclasses.[85]

- The ILA and Local 1475 **_arbitrarily_** and capriciously persuaded the Georgia Stevedore Association to require that all members of Class HH-1 be offered work before any member of Class HH-2 is offered work.[86]

- The ILA and Local 1475 **_arbitrarily_** and capriciously required that all members of Class HH-1 be offered work before any member of Class HH-2 is offered work. [87]

- The ILA and Local 1475 **_arbitrarily_** and capriciously misrepresented material facts regarding the 2023 MOU prior to the ratification vote.[88]

- The ILA and Local 1475's actions as described above were **_discriminatory_** to the Proposed Class and in **_bad faith._**[89]

Plaintiffs have alleged a variety of acts of both commission (packing the list and pushing through a new subclass) and omission (keeping the rest of the members in the dark). Plaintiffs have alleged that splitting the list resulted from

---

[84] Complaint, ¶62 (emphasis added)
[85] Complaint, ¶63(emphasis added)
[86] Complaint, ¶64(emphasis added)
[87] Complaint, ¶65(emphasis added)
[88] Complaint, ¶66(emphasis added)
[89] Complaint, ¶67(emphasis added)

favoritism to friends and family, not mere neutral rationality. Plaintiffs have, therefore, alleged that the facts presented demonstrate actions that are arbitrary, capricious, and in bad faith, all violating Local 1475's Duty of Fair Representation.

### *Local 1475's Argument Invites this Court to Err by Making Factual Determinations and Addressing Summary Judgment Type Arguments*

Defendant invites this Court to make factual determinations and speculate on what evidence might or might not be discovered. For instance, Defendant argues, "Local 1475's actions of proposing a change . . . that split the HH seniority group . . . was not arbitrary, discriminatory, or in bad faith but was based on neutral considerations." [90] Defendant argues that there might have been other benefits involved to the "group . . . [because they] arguably earned higher seniority than Plaintiffs."[91] Further, "Local 1475's actions were taken honestly, in good faith and without hostility or arbitrary discrimination."[92] This Court would have "no way of knowing whether any alleged misrepresentation affected the vote."[93] Plaintiffs "did or should have known of the Emergency List and those on it."[94] With respect, these suggested facts on this motion to dismiss, are conclusively deemed to be false because the Plaintiffs have alleged otherwise. This Court would err in relying on these suggestions.

---

[90] Defendant's Brief, Dkt. 12, p. 9,10
[91] *Id.*
[92] *Id.* at 11, 129 S. Ct. 1937
[93] *Id.* at 12, 129 S. Ct. 1937
[94] *Ashcroft*, 556 U.S. at 12, 129 S. Ct. 1937.

Similarly, Defendant makes the summary judgment style argument that "An addendum that was ratified by a membership vote cannot be so far outside the range of reasonable so as to be "irrational."[95] Not only is "rational" or "irrational" questions of fact, Defendant's citations, *Deboles v. Trans World Airlines, Inc*., and *Parker v. Connors Steel Co*., do not support this contention. *Connors*, indeed, holds the opposite: "While we agree that in an appropriate case a fair representation claim may be stated against a union for misrepresenting the terms of an agreement to its membership . . . ."[96]

### *As Similar Issues of Fact Would Preclude Summary Judgment, They Preclude the Grant of a Motion to Dismiss*

Candidly, Plaintiffs did not find significant case law on motions to dismiss a DFR claim. However, the reasoning and decisions of other Courts on summary judgment—of course, a higher standard—are illustrative.

A similar issue brought before the U.S. District Court in Northern California, *Ayala v. Pac. Mar. Assn*. In *Ayala*, the plaintiff longshoremen argued that the defendants had--through the "substantive merits of a union rule"--virtually closed off their ability to transfer "from the side," instead satisfying the LA Port's labor demand by drawing from a "nepotism-tinged pool of new workers" who join the registration list "from below[97]." The *Ayala* plaintiffs also alleged that union's

---

[95] Defendant's Brief, Dkt. 12, p.10

[96] *Parker v. Connors Steel Co*., 855 F.2d 1510, 1521 (11th Cir. 1988). A DFR violation was not found in Parker because they employees had not shown any relevant misrepresentation.

[97] *Ayala v. Pac. Mar. Ass'n*, No. C08-0119 TEH, 2009 U.S. Dist. LEXIS 102860, at *15 (N.D. Cal. Nov. 5, 2009)

handling of transfer requests violated its DFR. While summary judgment was granted regarding the merits of the underlying dispute, the decision was made on summary judgment, not a motion to dismiss.

As the district court in *Bianchi v. Int'l Bhd. of Teamsters, Chauffeurs & Warehousemen, Local 390*[98] noted, "The test for determining whether a plaintiff has shown "bad faith" is whether the plaintiff presents evidence of any fraudulent, deceitful or dishonest action taken by the union in representing the employee's interests." [99] In *Bianchi*, the Court held, "Summary judgment is particularly inappropriate in cases involving allegations of bad faith conduct by a union. See *Hines v. Local* 377, IBT[100](reversing summary judgment order for the union because evidence of bad faith on the part of the union was present; noting that "[a] case where questions of good faith or fraud are at issue should not be summarily decided without the taking of testimony unless it is clear that recovery cannot be had on any state of the evidence"); *Bannon v. American Air Filter Co., Inc., et al.*, [101] ("great caution should be taken in entering a motion for summary judgment in cases where allegations of bad faith are made")."[102]

---

[98] *Bianchi v. Int'l Bhd. of Teamsters, Chauffeurs & Warehousemen, Local 390, No. Case No: 02-23* (S.D. Fla. July 21 2003)

[99] *Bianchi*, 2003 U.S. Dist. LEXIS 13832, at *23 (2003) (citing *Sim v. N.Y. Mailers' Union No. 6*, 166 F.3d 465, 472 (2d Cir. 1999); *Wapnowski v. Chevron USA Prods. Co.*, 168 F.3d 504, 504 (9th Cir. 1999);*Smith v. UPS*, 96 F.3d 1066, 1069 (8th Cir. 1996))

[100] *Hines v. Local Union No. 377*, 506 F.2d 1153, 1157 (6th Cir. 1974)

[101] Bannon v. Am. Air Filter Co., *No.* C74-5 (W.D. Ky. Dec. 3 1974)

[102] The following is (substantively) footnote 3 from *Bianchi* as set out in the opinion: "The courts that have granted summary judgment in "bad faith" cases have done so where the plaintiff failed to present any evidence other than conclusory allegations. See, e.g., *Wapnowsk*i, 168 F.3d 504, 504 (9th Circ. 1999) ("the union has not presented evidence of any improper motive on the Union's part"); *Dober v. Roadway Express*, 707 F.2d 292, 294

Similarly, in *Gingras v. General Electric Co*.[103], the Court denied summary judgment on a DFR claim and stated, "I could not conclude that there existed no issues of fact material to whether Local 119's relevant conduct was fair and impartial or alternatively was arbitrary and motivated by personal animosity or political favoritism."[104] As the Court noted, "Conduct is not arbitrary, as a matter of law, if it is (1) based on relevant, permissible union factors which excludes (sic) the possibility of it being based upon motivations such as personal animosity or political favoritism; (2) a rational result of the consideration of those factors; and (3) inclusive of a fair and impartial consideration of the interests of all employees."[105]

---

(7th Cir. 1983) (granting summary judgment because "this is not a case . . . [where the] worker is on the outs with the union or is a member of some racial or other minority or is not a union man, [and the union] . . . refuses to prosecute the grievance at all or does so in a perfunctory manner by just going through the motions") (emphasis added); *Rupe v. Spector Freight Sys., Inc.*, 679 F.2d 685, 692 (7th Cir. 1982) (no evidence of hostility or animosity between plaintiff and union); *Balowski v. Int'l Union, United Auto., etc.*, 372 F.2d 829, 835 (6th Cir. 1967) (granting summary judgment for union where "nowhere in the material outside the complaint which was examined by the district court do facts or allegations appear which show or tend to show any improper motive or purposeful discrimination."); *Boggess v. Heritage Cadillac, Inc.*, 687 F. Supp. 417, 423 (N.D. Ill. 1988) (plaintiff testified there was no reason why union would be "out to get him"); *Bruno v. United Steelworkers of Am.*, 456 F. Supp. 425, 428 (D. Conn. 1978) (granting summary judgment where "there is no indication that plaintiff has a shred of real evidence which would tend to prove that the union acted out of spite, ill will or bad faith, . . . . [and] plaintiff admitted that his allegations of the union's hostility were based on a 'feeling' he had"); *Wark v. Gen. Motors Corp.*, *No. Nos.* 75-71 (E.D. Mich. Aug. 2 1977) (granting union's motion for summary judgment where plaintiff "does allege bad faith by the bargaining representative but he asserts no reason for the bad faith nor underlying circumstances from which bad faith may be inferred").

[103] *Gingras v. Gen. Elec. Co.*, 476 F. Supp. 644, 648 (E.D. Pa. 1979)
[104] *Gingras*, 476 F. Supp. at 648
[105] Id. (citing *Tedford v. Peabody Coal Co.*, 533 F.2d 952, 957 (5th Cir. 1976)

The reasoning behind these decisions points to the difficult factual questions that must be wrestled with in a DFR claim. Such questions should not be decided on a motion to dismiss. Plaintiffs have alleged sufficient facts to proceed and that is sufficient.

## CONCLUSION

Under federal labor law, Local 1475 has been given great power and must exercise that power "to serve the interests of all members." Plaintiffs' Complaint has adequately pled that it did not do so; and its actions were arbitrary, capricious, or made in bad faith. As such, the Motion should be denied or in the alternative, this Court should grant Plaintiffs leave to amend their Complaint.

Respectfully submitted,


101 Marietta Street
Suite 2650
Atlanta, Georgia 30303
(404) 979-3150
kevin.fitzpatrick@dcbflegal.com
charlesbridgers@dcbflegal.com

DELONG CALDWELL BRIDGERS
FITZPATRICK & BENJAMIN, LLC

*/s/Charles R. Bridgers*
Charles R. Bridgers
Ga. Bar No. 080791
*/s/ Kevin D. Fitzpatrick, Jr.*
Kevin D. Fitzpatrick, Jr.
Ga. Bar No. 262375
COUNSEL FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

The above signed counsel certify that on February 26, 2024, they filed the within and foregoing document with the Clerk via the Court's CM/ECF system, thereby ensuring electronic service upon all counsel of record.