IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| Lauren Dodd, et al, ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | Case No. 4:23-cv-00327-RSB-CLR |
| ) | |
| International Longshoremen's Association ) | |
| and International Longshoremen's ) | |
| Association Local 1475 Clerks and Checkers ) | |
| Union, Inc.; ) | |
| ) | |
| Defendants. ) | |

## LOCAL 1475'S *REPLY BRIEF*

COMES NOW DEFENDANT, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, LOCAL 1475 (hereinafter "Local 1475") and hereby submits this *Reply Brief* to the issues raised by Plaintiff in *Plaintiffs' Response Brief* to *Local 1475's Motion to Dismiss*.

At the outset, it is important to note that Plaintiffs have not objected to *Local 1475's Motion for Judicial Notice* (Doc. 13).[1] Therefore, the request for judicial notice should be granted.

**I.    Dismissal Pursuant to Rule 12(b)(6) is Appropriate in a DFR Case**

Dismissal pursuant to Rule 12(b)(6) is appropriate in a duty of fair representation case. Nearly[2] all of the cases cited by Plaintiffs in their argument that a motion to dismiss is inappropriate in a duty of fair representation claim[3] were decided before *Twombly*[4] and *Iqbal*.[5]

Plaintiffs state in their *Response* that they *candidly* could not find significant case law on motions to dismiss a DFR claim. However, Local 1475 cited to one such case in its *Motion to*

---

[1] Doc. 18, *Response*, P. 1.
[2] The only case cited by Plaintiffs that came after Twombly (2007) was Ayala v. Pac. Mar. Ass'n, 2009 U.S. Dist. LEXIS 102860 (N.D. Cal. Nov. 5, 2009) and all of rest of the cases cited predated Iqbal (2009).
[3] Doc. 18, *Response*, P. 22 – P. 24.
[4] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).
[5] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

*Dismiss* decided by this Court and upheld by the Eleventh Circuit involving Local 1475,[6] and can readily cite to others both in the Southern District of Georgia,[7] as well as the Eleventh Circuit.[8]

This Court's decision in *Oltmanns v. Int'l Longshoremen's Ass'n.* is instructive. In *Oltmanns*, Plaintiff was a Deck and Dockmen ("DND") worker in Local 1475 who brought a duty of fair representation claim alleging that Local 1475 and the Georgia Stevedore Association ("GSA") failed to grant him Clerks and Checkers ("CNC") seniority. The plaintiff claimed that he should be granted seniority for the CNC work based on DND hours worked. Additionally, in *Oltmanns*, the plaintiff alleged specific facts that Local 1475 "improperly tabled his grievance," and that other employees in similar circumstances received more favorable treatment.[9]

This Court nevertheless found that the plaintiff failed to adequately state a duty of fair representation claim, because there were *no allegations to plausibly plead intentional discrimination or bad faith*.[10] Instead, this Court found the plaintiff's allegations insufficient.

Local 1475 is in the same position here and is entitled to have Plaintiffs *Complaint* dismissed because Plaintiffs have failed to plausibly plead matters such as the time, location and content of the alleged material misrepresentation(s) and because Plaintiffs' claims are time barred. Plaintiffs have failed to plausibly allege violations of the duty of fair representation by Local 1475 within the Section 10(b) period and the case should be dismissed pursuant to Rule 12(b)(6).

---

[6] Doc. 12, *Motion to Dismiss*, P. 9, citing to this Court's case involving Local 1475: Oltmanns v. Int'l Longshoremen's Ass'n Local 1475 Clerks & Checkers Union, Inc., CIVIL ACTION NO.: 4:18-cv-188, 2019 U.S. Dist. LEXIS 112768, at *18 (S.D. Ga. July 8, 2019), aff'd, 837 F. App'x 689 (11th Cir. 2020) (unpublished).
[7] Shanks v. Potter, 2010 U.S. Dist. LEXIS 144220 (S.D. Ga. Dec. 28, 2010).
[8] Brown v. Air Line Pilots Ass'n, 813 F. App'x 353 (11th Cir. 2020): upholding an order by the Southern District of Florida to dismiss a duty of fair representation claim where the Plaintiff never described the alleged oppressive, threatening, harassing, or intimidating episodes in any detail and determined that his contentions were mere legal conclusions—unsupported by factual averments—and are thus insufficient to state a claim; Oltmanns v. Int'l Longshoremen's Ass'n Local 1475 Clerks & Checkers Union, Inc., CIVIL ACTION NO.: 4:18-cv-188, 2019 U.S. Dist. LEXIS 112768, at *18 (S.D. Ga. July 8, 2019), aff'd, 837 F. App'x 689 (11th Cir. 2020) (unpublished); and Galette v. Goodell, 2023 U.S. App. LEXIS 29727 (11th Cir. 2023).
[9] Oltmanns v. Int'l Longshoremen's Ass'n, 837 Fed. Appx. 689, 695 (11th Cir. 2020).
[10] Oltmanns v. Int'l Longshoremen's Ass'n, 837 Fed. Appx. 689, 696 (11th Cir. 2020).

## II. Plaintiffs do not Plausibly Allege Arbitrary, Discriminatory, or Bad Faith Conduct

### a. Plaintiffs do not plausibly allege arbitrary conduct by Local 1475

Whether a union acted arbitrarily, discriminatorily or in bad faith, involves distinct and separate inquiries.[11] A union's actions are arbitrary "only if, in light of the factual and legal landscape at the time of its actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational."[12] "This 'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong."[13] Indeed, the test for arbitrariness is "difficult to meet."[14]

Here, Plaintiffs simply allege, in conclusory fashion, that Local 1475: (1) persuaded GSA to: agree to the *Addendum*, *and* to require work be offered to HH-1 ahead of HH-2; (2) divided the Class HH into 2 subclasses; and that (3) Local 1475 *misrepresented material facts* regarding the 2023 MOU prior to the ratification vote.[15] Plaintiffs then insert formulaic language in front of each of these alleged actions to attempt to meet the pleading standard by stating that Local 1475 ***arbitrarily and capriciously*** did these things, or that the actions were ***discriminatory*** and in ***bad faith***. Plaintiffs' *Complaint* is full of the formulaic recitation of the language from the prima facie case inserted into vaguely worded actions and is inadequate under the pleading standard.

### i. Plaintiffs Failed to Allege the May 11, 2023 Vote was Arbitrary

Plaintiffs allege that the question of law and fact in this case is whether Local 1475 breached its duty of fair representation when it: (1) "split the job assignment classification to which Plaintiffs are assigned to (i.e., Class HH) into two subclasses, (i.e., Subclasses HH1 and HH2)."[16]

---

[11] Higdon v. United Steel Workers of America, 706 F.2d 1561, 1563 (11th Cir. 1983).
[12] Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 78 (1991).
[13] Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 45-46 (1998).
[14] Bejjani v. Manhattan Sheraton Corp., 2013 U.S. Dist. LEXIS 90467, at 20 (S.D.N.Y. June 27, 2013).
[15] Doc. 18, *Response*, P. 20 – reciting various paragraphs of the *Complaint*.
[16] Doc. 1, *Complaint*, P. 4-5, ¶14.

The duty of fair representation did not require that Local 1475 submit the *Addendum* for membership ratification.[17] The split of Class HH into two (2) subgroups, arose as a result of Local 1475 attempting to reach a reasonable good-faith negotiated resolution of a previously filed NLRB case in Case 10-CB-288927.[18] Local 1475 was faced with threats and litigation involving the HH group. It was in response to the charge in Case 10-CB-288927 that the *Addendum* language was crafted, and the membership, upon reviewing the language, voted to split the HH group into two subgroups.  Following the results of the membership vote, Local 1475 and the GSA collectively bargained for and agreed to the *Addendum*, whereupon the charging party in that case withdrew the charge.[19] Now, after ratifying these very concessions as part of the process with the NLRB to have those charges resolved, Plaintiffs are attempting to hold Local 1475 accountable.

In other words, Plaintiffs' case is based on the theory that the split, which was accomplished through the NLRB as a remedy for previously *alleged* violations of the NLRA, violates the duty of fair representation. However, under these circumstances, Plaintiffs have not plausibly alleged that Local 1475 has acted *arbitrarily* in its ratification of the *Addendum*.

b. **Plaintiffs do not plausibly allege discriminatory conduct by Local 1475**

"A union's acts are discriminatory when 'substantial evidence' indicates that it engaged in discrimination that was 'intentional, severe, and unrelated to legitimate union objectives.'"[20]

As the Eleventh Circuit further expounded upon in its de novo review of this Court's decision in *Oltmanns*, when discussing the discrimination prong of the duty of fair representation:

> "Intention is required for this claim, and without an allegation of intention, the proposed complaint does not adequately allege discrimination in violation of the duty of fair representation."[21]

---

[17] White v. White Rose Food, 237 F.3d 174 (2d Cir. 2001) "Federal labor law does not require rank-and-file ratification of employer-union agreements." (citations omitted).
[18] Doc. 13-4, Ex. D, *NLRB Office of General Counsel 01-23-24 Appeal Denial Letter*.
[19] Doc. 13-4, Ex. D, *NLRB Office of General Counsel 01-23-24 Appeal Denial Letter*; Doc. 13-7, Ex. G, *Addendum*.
[20] Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees of Am. v. Lockridge, 403 U.S. 274, 301 (1971).
[21] Oltmanns v. Int'l Longshoremen's Ass'n, 837 Fed. Appx. 689, 696 (11th Cir. 2020).

Here, the *Addendum* split the HH class into 2 subclasses based on *objective* criteria – hours worked on the Emergency List in CY 2020-2021 and in CY 2021-2022.[22] The *Addendum* contemplated years in the industry as a basis for the split, which is an objective criterion. Plaintiffs were not on the Emergency List in CY 2020-2021 and only worked 700 hours in CY 2021-2022.

It is the Plaintiffs' burden to plead facts alleging discrimination.[23] Plaintiffs have not offered any facts in support of their assertion that Local 1475 officials were motivated by discriminatory intent in their decision to split Class HH into 2 subclasses.[24] Plaintiffs have failed to plausibly allege discriminatory conduct by Local 1475 and their case should be dismissed.

    c.  **Plaintiffs do not plausibly allege bad faith conduct by Local 1475**

A union acts in bad faith when there is "proof that the union acted with 'an improper intent, purpose or motive,'" which "encompasses fraud, dishonesty, and other intentionally misleading conduct."[25] As with discrimination, this prong of a duty of fair representation claim looks to the subjective motivation of the union officials in their actions regarding the plaintiff(s).[26] Plaintiffs have failed to plausibly allege bad faith conduct by Local 1475 and their case should be dismissed.

    i.  **Allegation that Local 1475 Misrepresented Material Facts**[27]

Plaintiffs allege Local 1475 arbitrarily and capriciously "*misrepresented material facts*" prior to the ratification vote.[28] In fact, Plaintiffs entire *Complaint* relies on this alleged duty to disclose as the basis of its duty of fair representation claim. However, absent from Plaintiffs' *Complaint* are factual allegations to show that the alleged misrepresentation pertained to a material fact or that any alleged misrepresentation occurred within the limitations period.

---

[22] Doc. 13-7, Ex. G, *6-1-23 Addendum to the MOU (Addendum)*.
[23] Simo v. Union of Needletrades, 322 F.2d 602, 619 (9th Cir. 2003).
[24] Doc. 1, *Complaint*, P. 4-5, ¶14.
[25] Spellacy v. Airline Pilots Ass'n–Int'l, 156 F.3d 120, 126 (2d Cir. 1998).
[26] Crider v. Spectrulite Consortium, Inc., 130 F.2d 1238, 1244 (7th Cir. 1997).
[27] Doc. 1, *Complaint*, P. 18, ¶89.
[28] Doc. 18, *Response*, P 20 citing Doc. 1, *Complaint*, ¶66.

Plaintiffs' allegations regarding the alleged misrepresentation are so threadbare that it is impossible to know what conduct—much less when it occurred—that Plaintiffs are complaining about. Plaintiffs must allege with more particularity matters such as the time, location and content of the alleged misrepresentations, and the alleged misrepresented facts to withstand dismissal.

### 1. **Plaintiffs Fail to Allege the Time of the Misrepresentation**

The membership vote ratifying the *Addendum* happened on May 11, 2023.[29] The end of the Section 10(b) period is May 9, 2023. There is no allegation of fact in the *Complaint* setting forth the actions Local 1475 took from May 9, 2023 to May 11, 2023 that "*misrepresented material facts*" and therefore Plaintiffs' *Complaint* regarding this allegation fails to state a claim.

### 2. **Plaintiffs Fail to Allege the Content of the Misrepresentation**

Here, Plaintiffs' *Complaint* merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement,'"[30] and thus fails to plead adequately a claim of a breach of the duty of fair representation. Plaintiffs must allege that Local 1475 failed to disclose relevant information.[31] Here, there was nothing to explain to the membership. To split, or not to split, that was the question. Only serious misrepresentations that lack rational justification or are improperly motivated and that the membership would reasonably be expected to rely upon rise to the level of invidious action barred by the duty of fair representation.[32] Additionally, Plaintiffs must plead a causal relationship between the alleged misrepresentation or nondisclosure and their alleged injury, that is - that "but for" the alleged misrepresentation, the HH group would not have been split.[33] Plaintiffs failed to allege material misrepresentations made by Local 1475 and their case should be dismissed.

---

[29] Doc. 1, *Complaint*, P. 17, ¶78.
[30] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).
[31] Lewis v. Tuscan Dairy Farms, Inc., 25 F.3d 1138, 1142 (2d Cir. 1994); Parker v. Connors Steel Co., 855 F.2d 1510, 1521 (11th Cir. 1988); Swatts v. United Steelworkers of America, 808 F.2d 1221, 1224-25 (7th Cir. 1986): no violation: information readily available to the general public.
[32] O'Neill v. Air Line Pilots Ass'n, Int'l, 939 F.2d 1199, 1202 (5th Cir. 1991); Bautista v. Pan American World Airlines, Inc., 828 F.2d 546, 550-551 (CA9 1987).
[33] Sim v. New York Mailer's Union Number 6, 166 F.3d 465, 471 (2nd Cir. 1999); Considine v. Newspaper Agency Corp., 43 F.3d 1349, 1362 (10th Cir. 1994); Acri v. International Ass'n of Machinists, 781 F.2d 1393, 1397 (9th Cir.

### III.     Plaintiffs' Claims are Time Barred Under the Applicable Statute of Limitations

Plaintiffs allege in their *Response* that the Plaintiffs' claim is based on what happened within the statute of limitation.[34] Additionally, Plaintiffs claim that the *Addendum* constitutes—in and of itself—a breach of the duty of fair representation,[35] and that determining whether there was a breach does *not* depend on the legality of the early Emergency List creation.[36]

Plaintiffs filed their *Complaint* on November 9, 2023. The Section 10(b) period began on May 9, 2023. Following May 9, 2023, the following facts are alleged: "On May 11, 2023, the membership of Local 1475 conducted a single day ratification vote of the 2023 MOU." "On May 11, 2023, the membership of Local 1475 ratified the 2023 MOU." "On June 19, 2023, the ILA and Local 1475 effectuated the division of Class HH into the subclassifications of HH-1 and HH-2."

However, the gravamen of the duty of fair representation claim brought by Plaintiffs is that Local 1475 failed to disclose information related to the Emergency List in CY 2020-2021. The alleged failure to disclose was not an independent event under *Bryan Manufacturing Co.* for four (4) reasons: (1) the creation of the Emergency List was found by the NLRB to not be unlawful;[37] (2) a determination of the duty to disclose claim would require the assessment of conduct outside the Section 10(b) period; (3) there is nothing inherently unlawful about utilizing referrals from the bargaining unit to meet an emergency need for workers; and (4) treating the duty to disclose claim as a separate instance of enforcement would have a deleterious effect on Section 10(b)'s purpose.

---

1986): "causation would be established by proof that (1) the vote to ratify would have been different had the misrepresentations not been made; and (2) that the company would have acceded to union demands had the vote been different."
[34] Doc. 18, *Response*, P. 12.
[35] Doc. 18, *Response*, P. 12.
[36] Doc. 18, *Response*, P. 14.
[37] Doc. 13-4, Ex. D, *NLRB Office of General Counsel 01-23-24 Appeal Denial Letter*.

    a. **The creation of the Emergency List was found by the NLRB to *not* be unlawful.**

On January 23, 2024, the NLRB's Office of General Counsel held the following:

"The two HH subgroups arose as a result of the Union trying to reach a resolution of Case 10-CB-288927. In response to that charge, the Union crafted MOU language and the membership, upon reviewing the language, voted to split the HH group into two subgroups, whereupon the charging party in that case withdrew the charge. That case, and others before the Agency stemmed at least in part from the Union creating an "emergency" or "off the street list" in 2019 and 2020 to address an overwhelming need for workers. The Local's creation of that list was found not unlawful by an ALJ in Case 10-CB-266481. Also, in prior cases 10-CB249493 and 10-CB-258733 the question of whether the emergency/off the street list was secret was previously raised and found without merit."[38]

Plaintiffs do not allege facts to show that Local 1475 had *knowledge* that they had a duty to disclose information regarding the Emergency List.[39] Local 1475 could have just as easily relied upon the NLRB's previous decisions regarding the Emergency List being lawful.[40] "Negligence" or "mistake in judgment" is insufficient to show a breach of the duty of fair representation, particularly in light of the "considerable latitude" unions have representing workers.[41]

    b. **A determination of the duty to disclose claim would require the assessment of conduct outside the Section 10(b) period.**

Local 1475 disagrees with Plaintiffs' reasoning and with the Plaintiffs' conclusion regarding their interpretation of *Bryan Manufacturing Co.*.[42] It is Local 1475's position that the Plaintiffs misapprehend the meaning and effect of the holding in *Bryan Manufacturing Co.*,[43] and, misapprenhending, misapply the rationale to the extent that they argue that they are *not* required to prove a previous violation (*the unlawful population of the Emergency List*) in order to have the failure to disclose the information result in a breach of the duty of fair representation.

---

[38] Doc. 13-4, Ex. D, *NLRB Office of General Counsel 01-23-24 Appeal Denial Letter*.
[39] Oltmanns v. Int'l Longshoremen's Ass'n, 837 Fed. Appx. 689, 696 (11th Cir. 2020).
[40] Doc. 13-4, Ex. D, *NLRB Office of General Counsel 01-23-24 Appeal Denial Letter*.
[41] Oltmanns v. Int'l Longshoremen's Ass'n, 837 Fed. Appx. 689, 696 (11th Cir. 2020).
[42] Machinists Local Lodge 1424 v. Board (Bryan Manufacturing Co.), 362 U.S. 411, 416-417 (1960).
[43] Machinists Local Lodge 1424 v. Board (Bryan Manufacturing Co.), 362 U.S. 411, 416-417 (1960).

Plaintiffs entire case relies upon Local 1475 having a duty to disclose information about the Emergency List allegedly being populated in an unlawful manner in CY 2020-2021. Not disclosing information to the membership prior to the ratification vote is *not* a breach of the duty of fair representation *unless* it can be established that there was something unlawful to disclose.

Here, determining whether there was something unlawful to disclose would require an assessment of the earlier conduct and would necessarily depend upon whether the earlier conduct outside the Section 10(b) period amounted to something unlawful that must be disclosed. If nothing unlawful happened in CY 2020-2021, then there is nothing to disclose. Therefore, this case differs from one in which a party contends that a party, by some specific act, has failed to meet an obligation, the existence of which is established by circumstances present within the Section 10(b) period. In that situation, the failure to meet the obligation within the period constitutes an unfair labor practice complete in itself within the Section 10(b) period. An independent violation of the duty of fair representation in this case simply has not been plead where the unlawfulness of the conduct charged cannot be established without assessing events outside the Section 10(b) period.

    c. **There is nothing inherently unlawful about using referrals from the bargaining unit to meet an emergency need for workers.**

The *Complaint* lists relationships of workers on the Emergency List with bargaining unit members.[44] However, as the NLRB found,[45] the Emergency List was large and comprised "approximately 200 persons..."[46] Therefore, the vast majority of workers referred to the Emergency List (178 of the 200) are not alleged to have a connection with Local 1475 leaders.

No one disputes the need for additional workers in CY 2020-2021. Plaintiffs allege that in CY 2020-2021, there was unusual demand for workers that Local 1475 was having trouble meeting

---

[44] Doc. 1, *Complaint*, P. 10-13, ¶¶37-60.
[45] Doc. 13-4, Ex. D, *NLRB Office of General Counsel 01-23-24 Appeal Denial Letter*.
[46] Doc. 1, *Complaint*, P. 14, ¶66.

and that an Emergency List was created.[47] Likewise, the NRLB characterized it as an "*overwhelming* need for workers."[48] The workers on the Emergency List assisted Local 1475 to meet Local 1475's obligation to supply sufficient qualified labor to fill the available jobs.[49]

The purpose of the Emergency List was to meet this emergent need with qualified (*had to have a TWIC card*) and dependable workers who made themselves available for work. It certainly makes sense that if Local 1475 was struggling to fill labor orders that its bargaining unit members would seek assistance to fill those orders from people they knew. Reliance on employee referral is a common practice and the NLRB has consistently found that an employer, acting alone, may rely on a hiring system which gives preference to referrals from the employer's current employees.[50] The only caveat to this when the hiring agreement is between an employer and a union is that the agreement cannot give preference in hiring *or* discriminate on the basis of union membership. Here, there is no allegation that the Emergency List population had anything to do with union membership, and even so – any allegation would be time barred as set forth above.[51]

### d. Treating the duty to disclose claim as a separate instance of enforcement would have a detrimental effect upon the purposes of Section 10(b) of the Act.

As the Court in *NLRB v. Auto Warehousers, Inc.*, held:

"In teaching that Section 10(b) bars claims which must rely upon earlier violations outside the period, *Bryan Manufacturing* reasoned that the limitation embodied in Section 10(b) would have little significance if it could be circumvented by using any current event which would not have come about *but for* an earlier incident alleged to be an unfair labor practice…[52]

---

[47] Doc. 1, *Complaint*, P. 9, ¶¶35-36.
[48] Doc. 13-4, Ex. D, *NLRB Office of General Counsel 01-23-24 Appeal Denial Letter* (emphasis added).
[49] Doc. 1, *Complaint*, P. 10-13, ¶¶37-60.
[50] Ken Maddox Heating & Air Conditioning, 340 N.L.R.B. 43, 44 (N.L.R.B. September 5, 2003).
[51] Int'l Longshoremen's & Warehousemen's Union, 210 N.L.R.B. 952, 956 (N.L.R.B. May 28, 1974) union operating exclusive hiring hall unlawfully conditioned membership in class B upon sponsorship by class A, and eligibility to sponsor was conditioned on union membership – which is a violation of the NLRA – not the sponsorship program itself, but when a union operates the hiring hall to discriminate against registrants *based on union membership*.
[52] NLRB v. Auto Warehousers, Inc., 571 F.2d 860, 863 (5th Cir. 1978) (emphasis added).

Thus, in deciding whether a complaint makes mere evidentiary use of events anterior to the Section 10(b) period (*as Plaintiffs argue*) or whether it resurrects a defunct charge (*as Local 1475 argues*), this Court must keep in mind the purpose of the limitation:

> "to prevent persons from being brought to book on stale charges and to promote industrial stability by allowing parties after the time prescribed as reasonable to assess with certainty their liability for past conduct."[53]

The vote to split was accomplished through the NLRB and the issue of whether there was something to disclose prior to the vote is stale. Treating the alleged failure to disclose prior to the ratification vote as an act independent of the lawfulness of the creation of the Emergency List would not only ignore reality, but also would seriously undermine the purposes of Section 10(b).

## IV.  Conclusion

For the foregoing reasons, based upon the facts and applicable law stated herein and in its original *Motion to Dismiss* and *Brief*, Local 1475 respectfully prays that its *Motion* be granted and that Plaintiffs' *Complaint* against it be dismissed with prejudice, with all costs assessed against Plaintiffs, and for such other and further relief as this Honorable Court deems just and proper.

Respectfully submitted this 7th day of March, 2024.

        **CHARLES HERMAN LAW**

        /s/ Charles Herman
        Charles Herman
        Georgia Bar No. 142852
        ***Attorney for Defendant ILA Local 1475***

2 East Bryan Street, 4th Floor
Savannah, Georgia 31401
(912) 244-3999
(912) 257-7301 Facsimile
charles@charleshermanlaw.com

---

[53] NLRB v. Auto Warehousers, Inc., 571 F.2d 860, 863 (5th Cir. 1978) cjting Machinists Local Lodge 1424 v. Board (Bryan Manufacturing Co.), 362 U.S. 411, 424-425 (1960).

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| Lauren Dodd, et al, ) | |
| ) | |
|    Plaintiffs, ) | |
| v. ) | Case No. 4:23-cv-00327-RSB-CLR |
| ) | |
| International Longshoremen's Association ) | |
| and International Longshoremen's ) | |
| Association Local 1475 Clerks and Checkers ) | |
| Union, Inc.; ) | |
| ) | |
|    Defendants. ) | |

## *CERTIFICATE OF SERVICE*

    The undersigned certifies that I have on this day served all the parties in this case with this *Reply Brief* in accordance with the notice of electronic filing ("NEF") which was generated as a result of electronic filing in this court.

    This 7th day of March, 2024.

                                                      **CHARLES HERMAN LAW**

                                                      /s/ Charles Herman
                                                      Charles Herman
                                                      Georgia Bar No. 142852
                                                      ***Attorney for Defendant ILA Local 1475***

2 East Bryan Street, 4th Floor
Savannah, Georgia 31401
(912) 244-3999
(912) 257-7301 Facsimile
charles@charleshermanlaw.com