**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | |
|---|---|
| LAUREN DODD, RICHARD SMITH, and AMANDA HAMMOND, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNATIONAL LONGSHOREMEN'S ASSOCIATION LOCAL 1475 CLERKS AND CHECKERS UNION, INC.,<br><br>Defendant. | CIVIL ACTION NO.: 4:23-cv-327 |

**ORDER**

Plaintiffs brought this putative class action against Defendant International Longshoremen's Association Local 1475 Clerks and Checkers Union, Inc. ("Local 1475") and International Longshoremen's Association ("ILA") alleging a breach of the duty of fair representation to union members. (Doc. 1.) Defendant ILA was dismissed from this action on March 21, 2024. (Doc. 33.) Before the Court is the Plaintiffs' Motion for Class Certification. (Doc. 57.) Local 1475 filed a Response, which stated that it does not oppose the Motion. (Doc. 58.) For the reasons discussed below, the Court **GRANTS** Plaintiffs' Motion for Class Certification. (Doc. 57.)

**BACKGROUND**

The facts below are alleged in the Complaint, (doc. 1), and Plaintiffs' Motion for Class Certification, (doc. 57). Local 1475 is a local labor organization that, along with ILA, serves as the bargaining representative for clerks and checkers in the Port of Savannah ("Port"). (Doc. 1,

pp. 3–4.) Plaintiffs are bargaining unit members of Local 1475. (Id. at p. 3.) Local 1475 and the Georgia Stevedore Association ("GSA") are parties to a collective bargaining agreement, which governs the rates of pay, rules, and working conditions for clerks and checkers at the Port. (Id. at p. 7.)

Plaintiffs allege that Local 1475 urged GSA to enter into a Memorandum of Understanding ("2023 MOU") that subdivided the job classification to which Plaintiffs belonged (i.e., Class HH) into two Subclasses designated as HH-1 and HH-2. (Id. at p. 15.) The 2023 MOU defined Subclass HH-1 as

> All individuals who worked at least 700 hours through the Local 1475 hiring system during both the 2020–21 and 2021–22 Contract Years, and all individuals who were on an emergency list during the 2020–21 Contract Year and worked at least 700 hours through the Local 1475 hiring system during the 2021–22 Contract Year.

(Id. at pp. 15–16.) Subclass HH-2 was defined as "[a]ll other individuals who worked at least 700 hours through the Local 1475 hiring system during the 2021–22 Contract Year." (Id. at p. 16.) The 2023 MOU further provided that, "[f]or purposes of hiring preference within the HH classification, all members of the Sub-classification HH-1 will be referred work they are qualified to perform before any jobs are offered to members of Sub-classification HH-2." (Id.)

On June 19, 2023, Local 1475 effectuated the division of Class HH into Subclasses HH-1 and HH-2 pursuant to the 2023 MOU. (Id. at p. 17; doc. 57-1, p. 9.) According to the Complaint, the family and friends of Local 1475 leaders were placed in Subclass HH-1, while Plaintiffs and others were placed in Subclass HH-2. (Doc. 1, p. 2.) Because of the classification division, the amount of work available to members of Subclass HH-1 increased substantially while the amount of work available to members of Subclass HH-2 declined substantially. (Id. at pp. 17–18.)

Pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), Plaintiffs now move to certify a class comprised of all persons whom Local 1475 assigned to Subclass HH-2 on June 19, 2023. (Doc. 57.) Plaintiffs further request that the Court appoint Lauren Dodd, Richard Smith, and Amanda Hammond as class representatives, and Kevin D. Fitzpatrick, Jr., and Charles R. Bridgers as class counsel pursuant to Federal Rule of Civil Procedure 23(g). (Id.) In support, Plaintiffs filed a Memorandum of Law, (doc. 57-1), the Declaration of Amanda Hammond, (doc. 57-2), and the Declaration of Kevin D. Fitzpatrick, Jr., (doc. 57-3).

**STANDARD OF REVIEW**

To obtain class certification, Plaintiffs must have Article III standing,[1] and must show that the putative class satisfies the requirements of Rule 23(a) and at least one of the provisions of Rule 23(b). Carriuolo v. Gen. Motors Co., 823 F.3d 977, 981, 984 (11th Cir. 2016). The Rule 23(a) requirements are: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613 (1997). Here, Plaintiffs seek certification pursuant to Rule 23(b)(3), which further requires evidence that (1) the common issues of law or fact predominate over individual questions, and (2) a class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(3). However, before considering the Rule 23(a) requirements, or as part of the Rule 23(b)(3) analysis, "a district court must determine that a proposed class is 'adequately defined and clearly ascertainable.'" Cherry v.

[1] "Prior to the certification of a class, . . . the district court must determine that at least one named class representative has Article III standing." Headlee v. Wolford, No. 1:09-cv-092, 2010 WL 11613650, at *2 (S.D. Ga. Sep. 29, 2010) (quoting Prado-Steiman ex rel. Prado v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000)) (alterations adopted). Standing requires injury-in-fact, causation, and redressability. See Green-Cooper v. Brinker Int'l, Inc., 73 F.4th 883, 889 (11th Cir. 2023). Here, Plaintiffs allege that Local 1475 violated the duty of fair representation when it agreed to the 2023 MOU as discussed above. (Doc. 1, p. 2.) As a result of the alleged conduct, Plaintiffs suffered financial injury, and a judgment in favor of Plaintiffs would likely redress their injury. (Id. at pp. 2, 5–6.) Accordingly, the named Plaintiffs have adequate standing to bring these class claims.

Dometic Corp., 986 F.3d 1296, 1302, 1304 (11th Cir. 2021) (quoting Little v. T–Mobile USA, Inc., 691 F.3d 1302, 1304 (11th Cir. 2012)).

Although Local 1475 does not oppose Plaintiffs' Motion, the Court may certify the proposed class only after conducting a rigorous analysis and determining that the prerequisites of Rule 23(a) are satisfied. Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013); see also Gen. Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 160 (1982) ("[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable."); Headlee, 2010 WL 11613650, at *1 (Rule 23 analysis required despite defendant's non-opposition). This analysis entails some overlap with the merits of the underlying claim, but merits-related questions are considered only to the extent that they are relevant to determining whether the Rule 23 requirements are satisfied. Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 466 (2013).

Whether to certify a class is left to the district court's discretion. Hines v. Widnall, 334 F.3d 1253, 1255 (11th Cir. 2003); Freeman v. Motor Convoy, Inc., 700 F.2d 1339, 1347 (11th Cir. 1983). Moreover, a class certification order is subject to alteration or amendment at any time prior to a decision on the merits. Fed. R. Civ. P. 23(c)(1)(C); In re Bayshore Ford Trucks Sales, Inc., 471 F.3d 1233, 1254 (11th Cir. 2006).

## DISCUSSION

### I. Whether the Proposed Class is Adequately Defined and Ascertainable

The first question before the Court is whether the proposed class is adequately defined and ascertainable. See Carriuolo, 823 F.3d at 984. The Eleventh Circuit Court of Appeals regards class definition and ascertainability as a single inquiry, instructing that "a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination." Cherry, 986 F.3d at 1302, 1304. "A class is inadequately defined if it is defined through vague or subjective criteria," and "without an adequate definition for a proposed class, a district court

will be unable to ascertain who belongs in it." Id. at 1302 (citing DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970)).

Here, an individual's class membership is based solely on whether Local 1475 assigned them to Subclass HH-2 once the 2023 MOU took effect. (See doc. 57-1, p. 11.) As such, there are clear and objective criteria for determining class membership. Plaintiffs and Local 1475 agree that the proposed class is made up of sixty-four identifiable individuals. (Id.; see also doc. 1, p. 4; doc. 51, p. 3.) Plaintiffs further note that these individuals can be easily identified and confirmed through Local 1475's records. (Doc. 57-1, p. 11.) Accordingly, Plaintiffs' proposed class is adequately defined and clearly ascertainable.

## II. Whether the Proposed Class Satisfies the Requirements of Rule 23(a)

Next, the Court must determine whether Plaintiffs have shown that the proposed class meets all of the requirements for class certification under Rule 23(a), which are numerosity, commonality, typicality, and adequacy of representation.

### A. Numerosity

Rule 23(a) requires a class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Eleventh Circuit has generally found that a class of less than 21 members is inadequate, while a class of more than 40 members is adequate. Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986). As noted above, the parties here agree that the proposed class is comprised of sixty-four individuals. (Doc. 57-1, p. 11; see also doc. 1, p. 4; doc. 51, p. 3.) The Court finds that the class size is sufficient to establish numerosity.

**B. Commonality**

Next, Plaintiffs must show that "there are questions of law or fact that are common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, the claims must depend on a common contention "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Carriuolo, 823 F.3d at 984 (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011)). This is a "low hurdle" to overcome, Williams v. Mohawk Indus., Inc., 568 F.3d 1350, 1356 (11th Cir. 2009), and "even a single common question will do," Carriuolo, 823 F.3d at 984 (quoting Dukes, 564 U.S. at 359). This requirement will generally be met where the defendant has allegedly "engaged in a standardized course of conduct that affects all class members." In re Terazosin Hydrochloride, 220 F.R.D. 672, 685 (S.D. Fla. 2004) (citing Roper v. Consurve, Inc., 578 F.2d 1106, 1113 (5th Cir. 1978)).

As Plaintiffs point out, there is a common question of whether Local 1475 violated the duty of fair representation by agreeing to split Class HH into Subclasses HH-1 and HH-2, which further depends on whether Local 1745's conduct was arbitrary, discriminatory, or in bad faith. (Doc. 1, pp. 4–5; doc. 57-1, pp. 12–13.) The resolution of this central issue uniformly affects the claims of all proposed class members. Therefore, Plaintiffs have met the commonality requirement.

**C. Typicality**

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1275 (11th Cir. 2009)

(quoting Busby v. JRHBW Realty, Inc., 513 F.3d 1314, 1322 (11th Cir. 2008)). Here, the named Plaintiffs, like all members of the proposed class, were assigned to Subclass HH-2 under the 2023 MOU and allegedly suffered financial losses due to the resulting decrease in work opportunities. (Doc. 1, pp. 5–6, 19; doc. 57-1, p. 13.) Accordingly, Plaintiffs have satisfied the typicality requirement.

**D. Adequacy of Representation**

Lastly, adequacy of representation requires that "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement asks: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." Busby, 513 F.3d at 1323 (quoting Valley Drug Co. v. Geneva Pharms., Inc., 350 F.3d 1181, 1189 (11th Cir. 2003)); see also Griffin v. Carlin, 755 F.2d 1516, 1533 (11th Cir. 1985) ("The adequate representation requirement involves questions of whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation . . . .").

The proposed class representatives—the named Plaintiffs—seek the same type of recovery for the same type of injury arising from the same alleged conduct. (Doc. 1, pp. 5–6, 19; doc. 57-1, p. 14); see also Headlee, 2010 WL 11613650, at *4. They share the same interests as the rest of the proposed class, (doc. 57-1, p. 14; doc. 57-2, p. 4), and no conflict of interest has been brought to the Court's attention. Further, they have shown that they are committed to fully and fairly pursuing the litigation as class representatives, (doc. 1, p. 6; doc. 57-1, p. 14), and Plaintiffs' counsel have substantial experience in this type of litigation and subject matter, (doc. 57-1, p. 15; see generally doc. 57-3). Accordingly, Plaintiffs have met the adequate representation requirement.

### III. Whether the Proposed Class Satisfies the Rule 23(b)(3) Requirements

Having satisfied the Rule 23(a) requirements, Plaintiffs must still satisfy one of the Rule 23(b) prongs to obtain class certification. Vega, 564 F.3d at 1265. Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that (1) the questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). These requirements are commonly known as predominance and superiority. See Vega, 564 F.3d at 1265.

#### A. Predominance

The "central and overriding prerequisite" for certification under Rule 23(b)(3) is the predominance requirement. Id. at 1278. This requirement overlaps with the commonality requirement under Rule 23(a), but is even more demanding. Comcast Corp., 569 U.S. at 34; see also Amchem Prods., Inc., 521 U.S. at 609 (commonality requirement is "subsumed under" the "more stringent" predominance requirement). Plaintiffs must show that "the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." Kerr v. City of W. Palm Beach, 875 F.2d 1546, 1558 (11th Cir. 1989) (internal citation omitted). "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and . . . entitlement to . . . relief." Babineau v. Fed. Express Corp., 576 F.3d 1183, 1191 (11th Cir. 2009) (quoting Klay v. Humana, Inc., 382 F.3d 1241, 1255 (11th Cir. 2004)) (alterations adopted).[2]

[2] As Plaintiffs point out, (doc. 57-1, pp. 16, 18), the individual calculation of damages for each class member does not preclude class certification. Allapattah Servs., Inc. v. Exxon Corp., 333 F.3d 1248, 1261 (11th Cir. 2003); see also Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453 (2016) (certification may still be proper under Rule 23(b)(3) when "the central issues in the action are common to the class and

The proposed class members were all assigned from Class HH to Subclass HH-2 and were thus subject to the same seniority restriction put forth by the 2023 MOU. (Doc. 1, pp. 4–5.) Plaintiffs allege that the classification division and seniority restriction caused an injury common to all proposed class members, that is, the significant decline of work opportunities. (Id.) The central issue is whether Local 1475 breached the duty of fair representation when it agreed to split Class HH into Subclasses HH-1 and HH-2. (Doc. 57-1, p. 16.) A finding that Local 1475 breached its duty would entitle all proposed class members to relief, and a contrary finding would invariably prevent recovery. As a result, the evidence will focus on Local 1475's singular course of conduct that uniformly affected all proposed class members. Therefore, Plaintiffs have met the predominance requirement.

**B. Superiority**

Finally, a class action must be superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(3). Factors relevant to this inquiry include: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. Id. The focus is "on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." Klay, 382 F.3d at 1269.

---

can be said to predominate" even if damages must be tried separately); Klay, 382 F.3d at 1259–60 ("Particularly where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification."); Weekes-Walker v. Macon Cnty. Greyhound Park, Inc., 281 F.R.D. 520, 528 (M.D. Ala. 2012) (detailing the "number of management tools available to a district court to address any individualized damages issues that might arise in a class action").

As to the first two factors, no proposed class members have expressed an interest in individually controlling the prosecution of the action and the Court is not aware of any similar cases filed by or against the proposed class members. (See doc. 57-1, p. 17.) As to the third factor, the claims arise from Local 1475's singular course of conduct in Savannah. (Id. at pp. 15–16.) It would be "grossly inefficient and wasteful of the resources of the parties and the judiciary" to repeatedly decide the same issues through piecemeal litigation. Navelski v. Int'l Paper Co., 244 F. Supp. 3d 1275, 1310 (N.D. Fla. 2017). As to the fourth factor, it is unlikely that management of the class action will prove unreasonably difficult because the evidence will focus on Local 1475's singular course of conduct. (Doc. 1, pp. 3–7.) Therefore, certifying this case as a class action is the most efficient and superior method of handling this controversy.

**CONCLUSION**

Having found that Plaintiffs' proposed class meets all of the requirements of Rules 23(a) and (b)(3), the Court **GRANTS** Plaintiffs' Motion for Class Certification.[3] (Doc. 57.) The issues of (1) whether Local 1475 breached the duty of fair representation, (2) whether Local 1475's conduct meets the standard for an award of compensatory, general, or punitive damages, (3) the proper amount of damages, if any, and (4) the proper scope of injunctive relief, if any, are certified as to the following Class:

All persons whom Local 1475 assigned to Subclass HH-2 on June 19, 2023.

Further, the Court **APPOINTS** named Plaintiffs Lauren Dodd, Richard Smith, and Amanda Hammond as Class representatives. Pursuant to Rule 23(g), the Court **APPOINTS** Attorneys Kevin D. Fitzpatrick, Jr., and Charles R. Bridgers as Class counsel.

---

[3] Plaintiffs propose to bifurcate adjudication of liability and remedies. (Doc. 57-1, pp. 17–19.) At this early stage in the litigation, the Court declines to make a decision as to the appropriateness of bifurcation and reserves the right to render a decision on Plaintiffs' proposal at a later time.

The Court will hold a telephonic status conference in this case. The date, time, and other details for that hearing will be provided by the Undersigned's courtroom deputy clerk.

**SO ORDERED**, this 9th day of September, 2026.

R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA